## DECLARATION OF TERRY D. GARCIA

I, Terry D. Garcia, having personal knowledge of the facts contained in this declaration and being competent to testify to them, hereby state as follows:

1. I am currently the Executive Vice President for Mission Programs at the National Geographic Society, a job I have held since 1999.

2. It is the position of the National Geographic Society that all artifacts, including mummies, skulls, bones and other human remains, pottery, utensils, objects of art and other items from Cuzco, Machu Picchu and the surrounding areas found by the Bingham expeditions and subsequently sent to Yale University, are the property of the Republic of Peru and should be returned upon Peru's request.

3. This position is supported unanimously by the Board of Trustees of the National Geographic Society.

4. The National Geographic Society bases its position on the clearly manifested understandings of National Geographic, Yale University, Hiram Bingham and the Peruvian Government at the time that the expeditions occurred, as well as on its understanding of the law and facts today. Peru's ownership of artifacts found and exported by the Bingham expeditions is clearly outlined in the several governmental decrees in effect at the time of the expeditions. Bingham and others involved in organizing, planning, financing and executing Bingham's three Peruvian expeditions were fully aware and understood these Peruvian laws and the obligations that the laws imposed. Contemporaneous correspondence between the principal organizers of the expeditions confirms that position. Correspondence between these principal organizers archived at the National Geographic Society's headquarters in Washington, D.C. has been reviewed by Society officials and confirms that position.

5. The National Geographic Society has informed Yale University of the Society's

views. On November 30, 2001, I sent a proposal -- along with a legal analysis -- to representatives of Yale University. The analysis concluded that Peru was the rightful owner of the artifacts. The proposal required Yale University to affirm this fact. Yale never did. I have attached to this declaration a copy of the analysis I and our counsel submitted to Yale.

I declare under penalty of perjury that the foregoing is true and correct.

Oct 14, 2005
Date

Terry D. Garcia

MEMORANDUM  
February 3, 2003

STRICTLY CONFIDENTIAL  
For Discussion Purposes Only

# STATUS REPORT
## Machu Picchu Artifacts Held by Yale University

### Historical Background on Yale University's Possession of Machu Picchu Artifacts

Hiram Bingham conducted expeditions to Machu Picchu in 1911, 1912, and 1914-16. Each time, he excavated artifacts. These he exported to New Haven, Connecticut for study at Yale University on two occasions, immediately after his second and third expeditions. The law at the time of Bingham's expeditions required the artifacts to be inventoried before export. Thus, the Peruvian government or Yale University may have a contemporaneous inventory showing which pieces were exported on each occasion.[1]

Yale University claims to have returned some of the artifacts to Peru, as discussed below. Those that remain in Yale's possession constitute the most important collection of Machu Picchu artifacts in the world. On January 25, 2003, Yale University's Peabody Museum of Natural History inaugurated a major exhibit of the artifacts in New Haven, curated by Professor Richard Burger. In May 2003, the exhibit is scheduled to tour throughout the United States and eventually return to New Haven, where it will join the Peabody Museum's permanent collection.

For many years, international and Peruvian parties have protested Yale's continuing possession of the artifacts. This protest is likely to grow in urgency in tandem with news coverage of the current exhibit. Yale has resisted returning the artifacts, as discussed below.

The National Geographic Society co-sponsored Bingham's expeditions to Machu Picchu. Thus, National Geographic Society is forever associated in the public consciousness with Machu Picchu and the artifacts that Bingham exported. In fact, much of the correspondence from the Peruvian government regarding the artifacts was, from the beginning, addressed to National Geographic Society as an interlocutor with Yale University.

None of the Machu Picchu artifacts are in National Geographic Society's possession. However, given its historical partnership with the Peruvian government and Bingham, National Geographic Society has worked to facilitate a resolution of the artifacts controversy between Yale University and the Peruvian government. This sometimes puts National Geographic Society in a difficult position. Some may mistakenly believe that it has some degree of control over the artifacts, and Yale University may not understand that National Geographic Society's recent efforts are solely

---

[1] *Decreto Supremo* No. 1592, Oct. 31, 1912; *Decreto Supremo*, Jan. 27, 1916 (requiring inventory of artifacts before export). If Peru does not have an independent contemporaneous inventory, it should officially request it from Yale University, along with any other evidence of the dates on which the artifacts were exported from Peru. A detailed inventory of Yale's Machu Picchu collection was prepared in the last few years. However, without the original 1912 and 1916 inventories, it cannot be determined definitively under the terms of which of the two Peruvian executive orders each artifact was exported.

in response to concerns raised by Peru. In order to defuse this difficulty, the Peruvian government could acknowledge in writing that the National Geographic Society bears no responsibility for the Machu Picchu artifacts not having been returned to Peru and that its efforts to facilitate a resolution to the controversy are a good-faith response to Peruvian inquiries.

**Legal Background on Export and Return of the Artifacts**

By the time Machu Picchu was discovered, Peruvian law forbade export of artifacts, *see Decreto Supremo*, August 19, 1911 (referring to general rule against export of artifacts).[2] Thus, Bingham could not have exported the artifacts unless the terms of a special decree trumped the general rule. In fact, two such decrees were issued at Bingham's request.

The first executive order – *Decreto Supremo* No. 1592, issued on October 31, 1912 – permitted Bingham to export artifacts for study but reserved the Peruvian government's right to request their return. The second executive order, issued on January 27, 1916, permitted Bingham to export 74 crates of artifacts but required that they be returned within eighteen months. Both orders also required Bingham to provide the Peruvian government with a copy of all photographs taken and reports prepared.

Neither order transfers legal title over the artifacts from the Peruvian government to Yale University. In fact, the 1911 executive order that establishes the general rule against export of artifacts explicitly states that all artifacts belong to the Peruvian government.[3] The 1912 order reconfirms that rule but, in authorizing Bingham to export artifacts, clarifies that the general rule regarding ownership was not meant to prohibit respected international organizations like Yale University from being able to study the artifacts outside Peru. Thus, the executive orders gave Bingham the artifacts on research loan, not legal title.

The artifacts exported pursuant to the 1916 executive order were not returned to Peru within eighteen months, as required by the order. Peru made various inquiries and requests to Yale University for their return, sometimes directly and sometimes through National Geographic Society. In response to Yale University's request for more time, the deadline for returning the artifacts was extended by several years by *Decreto Supremo* No. 2169, issued on December 4, 1920. Yale University has stated to National Geographic Society that the 74 containers exported pursuant to the 1916 executive order were eventually returned in full to Peru,[4] though well after the deadline. If this is true, the artifacts possessed by Yale University are solely those excavated during the 1911 and 1912 expeditions.

---

[2] Yale may be able to make the argument that any artifacts exported prior to August 19, 1911 are not covered by this general rule but, rather, by its more lax 1896 predecessor. However, we are aware of no evidence that any of the artifacts in Yale's possession were exported before August 19, 1911.

[3] In contrast, the applicable law prior to the 1911 executive order appears to have given legal title over artifacts to those who discovered them, *see Decreto Supremo*, April 27, 1893.

[4] National Geographic Society has no independent corroboration of this assertion by Yale University.

The 1912 executive order clearly requires that all artifacts exported pursuant to its terms be returned to Peru upon the Peruvian government's request. Most importantly, it applies not only to artifacts that were excavated pursuant to its terms but also all artifacts that Bingham had excavated *previously*:

> "*[Art.] 4. -El gobierno del Perú se reserva el derecho de exigir de la Universidad de Yale y de la Sociedad Geográfica Nacional de los Estados Unidos de Norte América, la devolución de los objetos únicos y de los duplicados que se extraigan y <u>hayan extraido, a los que se refiere el art. 1 del supremo decreto de 19 de agosto de 1911</u>, ya citado; así como copia de todos los estudios e informes relativos a <u>las exploraciones que se hayan practicado</u> en el territorio nacional, para declararlos oficiales, si lo creyera así oportuno previo dictamen del Instituto Histórico del Perú*" (emphasis added).

Thus, the 1912 executive order bound Yale to return all artifacts upon Peru's request, including those uncovered during the 1911 expedition. This is the case regardless of whether some of the artifacts were exported before the 1912 executive order was issued. In any case, it would have been illegal for Bingham to export artifacts after the 1911 executive order prohibiting export was issued and before the 1912 executive order was issued, as explained above. Nonetheless, there does appear to have been some problematic activity that the 1912 executive order was meant to rectify, since it includes the following observation: *Considerando Que las exploraciones y excavaciones practicadas hasta la fecha por el Dr. Hiram Bingham, Comisionado de las referidas instituciones, no se han sujeto estrictamente a lo que preceptúan los arts. 5 y 6 del supremo decreto de 27 de abril de 1893 . . .*"

Yale University might want to argue that the retroactive effect of the 1912 executive order overreached. However, Bingham availed himself of the 1912 executive order to export artifacts (and would, otherwise, have had no other legal basis for their export). In so doing, he consented explicitly or implicitly to the terms of the 1912 executive order, including the terms that required the return of all previously excavated artifacts, upon Peru's request.

The Peruvian government's rights to repossess the artifacts under the 1912 executive order are triggered only if it has officially requested the return of the artifacts. Such request appears to have been made on October 26, 1920 by Eduardo Higginson, Peru's Consul General in the United States. In a letter to National Geographic Society, relayed to Yale University, he made his request "in accordance with article four of the Supreme Resolution No. 1592 issued by the Director General of Instruction on the *31st of October 1912*" (emphasis added). However, Yale University appears to have interpreted this request as applying only to the artifacts that were exported pursuant to the 1916 executive order. In order to remove any doubt, it may be necessary for the Peruvian government to again officially request the return of all artifacts in accordance with the 1912 executive order.

## National Geographic Society's Attempts at Facilitation

Though it possesses none of the artifacts, National Geographic Society is committed to ensuring that the current controversy is resolved appropriately. Thus, it submitted a proposal to Yale at the end of 2001, suggesting one possible resolution of the controversy. NGS believes that its proposed partnership offers a cooperative vision for resolving the controversy while ensuring

3

that the artifacts are cared for professionally and that Peru maximizes the artifacts' value-added with regard to tourism promotion and international cultural and educational collaboration. In short, Peru's title to all the artifacts would be recognized, the Peabody Museum's touring exhibit would conclude in Peru, where it would be divided in two. Peru would then send half to Yale on loan, to promote Peruvian tourism and culture. (See attached document for more details.) In any case, National Geographic Society's proposal was just one of a myriad possible variations on a partnership that might facilitate resolution of the artifacts controversy.

Professor Richard Burger of Yale has long discussed the possibility of returning a portion of the artifacts to Peru if their proper care can be ensured. Now that his exhibit has opened in New Haven, he may be more disposed to planning a "next step" along the lines proposed by National Geographic Society.

Yale initially expressed interest in the proposal but later decided not to discuss the proposal with National Geographic Society and the Peruvian government, as National Geographic Society had requested. Instead, Yale informed National Geographic Society that it would pursue independent efforts to reach an agreement with the Peruvian government. It appears not to have made any serious or reasonable proposals, however.

NGS continues to be willing to facilitate an agreement. However, because Yale has chosen not to coordinate with NGS, NGS is at an impasse. If the Peruvian government chooses to deal directly with Yale, NGS stands willing to offer its assistance if it might be helpful at any point in the discussions.

Welby Leaman
1330 New Hampshire Avenue, NW, Apt 923, Washington DC 20036 (home)
1500 Pennsylvania Av, NW, Washington DC 20220 (office) — but only by courier
202-622-0604 (fax)          Fm 1440 NYA Rm 4405
202-549-7884 (cell)
202-622-0099 (work)

4