UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| | : | |
| **REPUBLIC OF PERU,** | : | **Case No.:  3:09-cv-01332 (AWT)** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **YALE UNIVERSITY** | : | |
| | : | |
| Defendant. | : | **February 27, 2010** |

**MEMORANDUM OF LAW OF THE REPUBLIC OF PERU IN
SURREPLY TO YALE UNIVERSITY'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

The Republic of Peru respectfully responds to Yale University's Reply to Peru's Opposition to Yale's Motion to Dismiss ("Reply Memo") dated January 8, 2010 (Docket No. 67).

## PRELIMINARY STATEMENT

The Republic of Peru filed this action in December 2008, seeking the return of artifacts excavated and removed in the early 1900's by Hiram Bingham from the ancient Incan ruins of Machu Picchu and surrounding areas near Cuzco, Peru. Those artifacts now are located at Yale although they remain the property of Peru.

Peru's complaints have always included claims under Peruvian law. Yet, when Yale moved to dismiss the Amended Complaint in October 2009 it said nothing about Peruvian law. Instead, Yale chose only to rely on Connecticut law as a purported basis for dismissal. In opposing Yale's motion ("Peru Opp. Mem."), Peru offered an exhaustive analysis of its rights in the artifacts under Peruvian law and of Peru's right to pursue those claims in this action, including why Peruvian law applied here. In its reply Yale, *for the first time*, offered assertions on Peruvian law (albeit without the support of an actual expert on Peruvian law) and also *for the first time* raised issues as to the level of deference this Court should accord to the Peruvian government's interpretation of Peruvian law.

Yale's assertions on Peruvian law are gravely mistaken and its reliance on a single district court decision to attempt to preclude application of Peruvian law here should be rejected.

## ARGUMENT

1. <u>Yale's Assertions Regarding Peruvian Law Are Demonstrably Wrong.</u>

Yale's Reply Memo advances three new, broad premises regarding Peruvian law, which Yale asserts make it impossible for Peru to proceed here. Yale now argues that (i) Peru's law on

limitations is separate from the question of title; (ii) earlier Peruvian legal Codes (of 1852 and 1902) "trump" the principles set forth in Peru's Opposition Memorandum; and (iii) Peruvian law would prohibit this action, including because more recent Codes have no application to artifacts removed from Peru long ago. Yale Reply Memo at 17-19.

As shown in the Second Declaration of Dr. Javier Belaunde, sworn to February 17, 2009 ("Second Belaunde Decl." a copy of which is attached as <u>Exhibit 1</u>), Yale's arguments are incorrect and exhibit a fundamental misunderstanding of Peruvian law. In order to keep this memorandum as brief as possible, Peru relies on that Declaration and the prior Belaunde declaration[1] for the substance of the points noted below:

- Contrary to Yale's assertions, the question of ownership of the artifacts drives the question of limitations because, under Peruvian law, Peru's ownership status is what permits it to bring an action to recover the artifacts *and* which establishes that this right is *not* subject to a prescriptive limitation. <u>See</u> Second Belaunde Decl. ¶ 2; First Belaunde Decl. ¶¶ 9, 21.

- Neither of the provisions cited by Yale from the 1852 Civil Code or the 1902 Water Code is applicable here because Yale has ignored (i) the special meaning which "treasure" has under Peruvian law and (ii) that under Peruvian law the artifacts in issue were not treasures. Second Belaunde Decl. at ¶¶ 4-5. In any event, neither of the provisions cited by Yale could "trump" later Peruvian decrees or resolutions. Rather, Peruvian law would require that any conflict be avoided by an interpretation which harmonized the laws in question. <u>Id.</u> at ¶ 6.

- Yale also has misread the Supreme Resolution of February 19, 1921 in claiming it is a grant of title. Once again, Yale misinterprets the meaning of key terms. According to Yale, under the 1921 Resolution, Peru "ceded" to Yale "only the duplicates of the antiquities of all kinds which it took for the purposes of study and which are to be returned on or before January 1922." What Yale ignores is that in Spanish, the definition of "*ceder*" does not include the transfer of title, nor does it have such a meaning as a matter of Peruvian law – under which it is only an assignment of use and administration, and under which to convey title without a legislative act would have lacked legal authority and effect.[2] <u>Id.</u> at ¶ 7.

---

[1] Declaration of Dr. Javier de Belaunde, sworn to November 27, 2009 ("First Belaunde Decl.").
[2] In any event, contrary to Yale's repeated claim that it returned the items it was supposed to return in 1921 (Yale Reply Memo at 1), a letter by Yale from that time confirms that only boxes of skeletal remains (not other artifacts) were returned to Peru in 1921. <u>See</u> Letter from Yale University, dated September 22, 1921 (Exhibit 2-1 to the Declaration of Owen C. Pell, sworn to February 25, 2010 ("Pell Decl."), which is attached as Exhibit 2 to this Memorandum). These

- Yale's reading of the 1852 Civil Code to mean that title passes through acquisitive prescription after 40 years "in all circumstances" is incorrect because it ignores the fact that title and good faith are only two of the *four* factors needed for acquisitive prescription. Since Yale never had the substantive rights of a possessor under Peruvian law (a third necessary factor), it cannot satisfy these standards for this kind of prescription. Id. at ¶ 9; First Belaunde Decl. ¶ 22.

- There is nothing unusual or unfair in applying the current applicable Civil Code for an *accion reividincatoria* relating to Peru's substantive rights as an owner. The Civil Codes of 1852 and 1936 have been repealed. Since Peru's action is taking place now, the *accion reivindicatoria* must be governed by the Civil Code in force now.[3] Second Belaunde Decl. ¶ 10.

- Even if the 1852 Civil Code did apply here, Peru's rights would not be extinguished. The 1852 Civil Code generally recognizes property as a perpetual right, which is not subject to prescription. The 1984 Code simply codified this well-known and pre-existing principle. Id. at ¶¶ 13-14. To the extent a prescriptive term might even apply under the 1852 Civil Code, the term would not have expired because it only could have run after Yale finally refused to return the artifacts. Id. at ¶¶ 15-16.

- Yale has offered no contrary Peruvian law evidence to rebut the showing that by its conduct it renunciated extinctive prescription as a remedy. Indeed, under either the 1852 or 1984 Civil Codes, Yale's behavior amounted to renunciation. Prior to the breakdown of negotiations, Yale was willing to be recognized as a steward of the artifacts and made no argument that it had gained ownership of the artifacts through prescription. Id. at ¶¶ 17-21.

---

boxes were much less than the volume of boxes removed from Peru by Yale in 1914-15. See Oficio No. 52 of January 5, 1916, Pell Decl., Ex. 2-2 (inventory of 74 boxes exported by Yale).
[3] The same would be true under U.S. law. For example, in determining whether federal subject matter jurisdiction exists, we look to the status of the parties at the time suit is commenced, not when the claim arose. Dole Food Co. v. Patrickson, 538 U.S. 468, 478 (2003) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought." (internal quotation marks and citations omitted)). Similarly, when Congress amended the statute of limitations for securities fraud actions, those changes applied to actions commenced after a date certain, not when the claims arose. Private Securities Litigation Reform Act of 1995, Pub. L. 104-67 § 108, 109 Stat. 737, 758 (codified as amended in 15 U.S.C. § 77*l* note (2006)) [hereinafter "PSLRA"] ("The amendments made by this title shall not affect or apply to any private action . . . commenced before and pending on the date of enactment of this Act."); see Gerber v. MTC Electronic Technologies Co., 329 F.3d 297, 309-10 (2d Cir. 2003) (holding that "[a]mending the complaint, even to add additional plaintiffs, did not create a new action," and thus the PSLRA did not apply where the complaint was amended after the PSLRA's effective date but the action was initially filed before that date); Lyons v. Scitex Corp., 987 F. Supp. 271, 273-74 & n.3 (S.D.N.Y. 1997) (where the action is commenced before the PSLRA's effective date, the PSLRA does not govern).

3

Thus, under Peruvian law, Yale may not sever the link between the substantive law relating to Peru's status as an owner and the principles of prescription that Yale would like to use to bar this action, nor has Yale otherwise provided any grounds for dismissing Peru's claims under Peruvian law. Accordingly, the motion to dismiss should be denied.

### 2. Peru's Interpretation of Its Laws Should be Given Substantial Deference

The Second Circuit has held that substantial deference is owed to a foreign sovereign's views regarding its own laws. See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70, 92 (2d Cir. 2002) (hereinafter "Pertamina"). In Pertamina, the court specifically noted that where there is a choice between two interpretations of foreign law, the interpretation supported by the foreign sovereign of its own law should be favored. Id. In affording such deference, the Second Circuit is in line with other Circuits which have recognized this rule. See, e.g., In the Matter of Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978, 954 F.2d 1279, 1312 (7th Cir. 1992) (fact of sovereign's involvement in action does not justify disregarding the sovereign's conclusions); Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 714-15 (5th Cir. 1999) (U.S. courts owe deference to foreign government interpretations of foreign law). Indeed, given the deference usually afforded administrative agencies in interpreting their own statutes and regulations, the Seventh Circuit noted that principles of international comity require the same deference to foreign sovereigns. Amoco Cadiz, 954 F.2d at 1312 ("Giving the conclusions of a sovereign nation less respect than those of an administrative agency is unacceptable.").

In asserting that this Court should not recognize Peru's statements on Peruvian law, Yale relies on an older decision from outside this Circuit which does not as a matter of law and fact apply to this case. See Yale Reply Memo. at 18 (citing Gov't of Peru v. Johnson, 720 F. Supp.

4

810 (C.D. Cal. 1989)).  In <u>Johnson</u>, the applicable Peruvian law was different because, unlike this case, the origin of the artifacts at issue was not established, it was undetermined when those artifacts were found, and there was evidence that defendant purchased some of the artifacts. Finally, the court's discussion of Peruvian law in <u>Johnson</u> is dicta, given the holding that Peru's proof of foreign law came too late (after trial) to be considered.  <u>Johnson</u>, 720 F. Supp. at 812-813; <u>see also</u> <u>Government of Peru v. Wendt</u>, 933 F.2d 1013, 1013 (9th Cir. 1991) (affirming <u>Johnson</u> based on failure to prove that the artifacts originated in modern-day Peru).[4]

## **CONCLUSION**

For the foregoing reasons, the Republic of Peru respectfully submits that Yale University's Motion to Dismiss the Amended Complaint should be denied.

---

[4] Moreover, to the extent the statement of Peruvian law in <u>Johnson</u> was simply incorrect, Peru would be entitled to correct it (and Yale would be entitled to challenge that).  Here, Yale has offered no valid interpretation of Peruvian law which would support its motion to dismiss.

5

REPUBLIC OF PERU


By:    /s/ Owen C. Pell
        Owen C. Pell (phv03653)
        WHITE & CASE LLP
        1155 Avenue of the Americas
        New York, NY 10036-2787
        Tel.: (212) 819-8200
        Fax: (212) 354-8113
        Email: opell@whitecase.com

        Jonathan C. Hamilton (phv03654)
        Carolyn B. Lamm (phv03667)
        WHITE & CASE LLP
        701 Thirteenth Street, N.W.
        Washington, DC 20005-3807
        Tel.: (202) 626-3600
        Fax: (202) 639-9355
        Email: jhamilton@whitecase.com
        clamm@whitecase.com

        Brian P. Daniels (ct11863)
        BRENNER, SALTZMAN &
        WALLMAN LLP
        271 Whitney Avenue
        New Haven, CT 06511
        Tel.: (203) 772-2600
        Fax: (203) 562-2098
        Email: bpdaniels@bswlaw.com

        *Counsel to Plaintiff Republic of Peru*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on February 27, 2010, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

                         /s/ Owen C. Pell
                         Owen C. Pell (phv03653)