# EXHIBIT B-23

# CODIGO CIVIL

# V

## EXPOSICION DE MOTIVOS Y COMENTARIOS

DERECHO DE SUCESIONES : ROMULO E. LANATTA GUILHEM
DERECHOS REALES : LUCRECIA MAISCH VON HUMBOLDT
LAS OBLIGACIONES : FELIPE OSTERLING PARODI

COMISION ENCARGADA DEL ESTUDIO Y REVISION DEL CODIGO CIVIL
COMPILADORA : DELIA REVOREDO DE DEBAKEY

La *ratio legis* es aquí evidente, el Estado, mediante el *jus imperium* puede establecer restricciones al derecho de propiedad y a su ejercicio; las mismas que no pueden ser arbitrarias, pues tal sería caer en el totalitarismo y autoritarismo sino que, por expreso mandato constitucional, deben estar específicamente establecidas y sólo por causa de necesidad y utilidad pública o de interés social.

Lógicamente estas restricciones son normas de orden público contra las que no cabe pacto en contrario.

"**Artículo 926.**— Las restricciones de la propiedad establecidas por pacto para que surtan efecto respecto a terceros, deben inscribirse en el registro respectivo".

Esta norma no tiene precedentes en el Código anterior y está destinada a resolver el problema de la oponibilidad a terceros de las restricciones a la propiedad acordadas por las partes. La *ratio legis* en muy clara: las partes, mientras no vulneren normas imperativas de la ley, pueden acordar restricciones al derecho de propiedad o a su ejercicio, es decir el efecto inter—partes surge del convenio. Ahora bien, para evitar un eventual fraude o simulación frente a terceros, que podrían verse perjudicados por estas restricciones, se exige que figuren inscritas en el Registro respectivo, de lo cual se desprende que esta norma se aplica tanto a bienes muebles como a inmuebles.

La norma se fundamenta en los principios básicos de la institución registral, o sea la fe pública que otorga el acto y la publicidad que brinda, principios que constituyen valiosa tutela del derecho de terceros.

Es interesante anotar que, a pesar que el Código de 1984 mantiene el sistema facultativo de las inscripciones de la propiedad inmueble, conserva la exigencia de la inscripción respecto a los actos oponibles a terceros.

"**Artículo 927.**— La acción reivindicatoria es imprescriptible. No procede contra aquél que adquirió el bien por prescripción".

Esta norma no tiene precedentes en el Código anterior y ha sido recogida del artículo 139 de la Ponencia, pero sólo en lo referente a la imprescriptibilidad de la acción reivindicatoria, que como expresa el Maestro Castañeda no se extingue por el transcurso del tiempo, es decir, protege al titular del derecho de propiedad durante todo el tiempo, sean 40, 50 o más años, quien siempre podrá reivindicar el bien de su propiedad en caso de desposesión.

# EXHIBIT B-24

Case 3:09-cv-01332-AWT    Document 78-13    Filed 06/01/10    Page 5 of 11

# TRATADO DE DERECHO CIVIL

SEGÚN EL TRATADO DE PLANIOL

por

**Georges Ripert**
Miembro del Instituto
Profesor Honorario en la Facultad
de Derecho de París

**Jean Boulanger**
Profesor de Derecho Civil de
la Facultad de Derecho
de París

## TOMO VI

### LOS DERECHOS REALES

*Análisis de los derechos reales — La propiedad inmobiliaria — La propiedad mobiliaria — Usufructo — Servidumbre — Concesiones*



**LA LEY**
BUENOS AIRES

IMPRESO EN LA ARGENTINA
Queda hecho el depósito que previene la ley 11.723
Copyright © by LA LEY, Sociedad Anónima Editora e Impresora, calle Tucumán 1467 y 1471 (R. 84.)
Buenos Aires - República Argentina

ción. La precariedad supone que el poseedor detenta el inmueble por cuenta de un tercero, es decir, que ha contraído el compromiso de restituirlo a su propietario. Para que el autor del reconocimiento se encuentre en adelante en estado de precariedad, sería necesario por lo tanto que haya reconocido no sólo no ser propietario del inmueble, sino al mismo tiempo ser *deudor* personalmente del mismo ante otro, como locatario, por ejemplo. Pero el reconocimiento hecho en favor del propietario no *crea* esa obligación, que se deriva de un contrato anterior (arrendamiento o cualquier otro contrato que entrañe tenencia), sino que simplemente la hace constar; esa precariedad existe con anterioridad al reconocimiento y no se deriva de él.

## § 2. — Suspensión de la prescripción

2735. EFECTO DE LA SUSPENSIÓN. — Una vez suspendida la prescripción, no corre el término legal, ya se trate de la prescripción treintenaria o de la prescripción de diez a veinte años. Una posesión treintenaria no establece, pues, con certeza el derecho del propietario. La suspensión del plazo puede a veces ser muy prolongada; por ejemplo, si se supone que una criatura se ha convertido en propietaria de un inmueble, la suspensión quedará en suspenso durante tal vez una veintena de años; lo mismo sucede si el propietario es un alienado interdicto. Hay por ello una causa de grave incertidumbre.

2736. CAUSAS DE LA SUSPENSIÓN. — Las causas de suspensión han sido estudiadas para la prescripción extintiva. Son aplicables las mismas causas legales (núm. 2032 y sigts.).

La jurisprudencia ha admitido también el caso de fuerza mayor por aplicación de la regla: *contra non valentem agere non currit praescriptio.*

Sin embargo, el beneficio de la suspensión no puede ser invocado por un incapaz más que si éste demuestra que durante el tiempo de cumplimiento de la prescripción, él o sus autores podían pretender la existencia de un derecho sobre el inmueble en litigio (Cass. civ., 12 de octubre de 1953, D. 1954, 40).

2737. IGNORANCIA DE LA EXISTENCIA DEL DERECHO. — La Corte de Casación admite la suspensión de la prescripción todas las veces que el propietario puede razonablemente ignorar el hecho que da origen a su acción y a su interés en actuar (Cass, 27 de mayo de 1857, D. 57. 1. 290; Req., 27 de enero de 1941 [motivos], *Gaz. Palais*, 1941. 1. 238). Se ha objetado, no sin alguna razón, que esta última causa de suspensión tiende a destruir casi enteramente la regla que la hace correr en principio contra toda persona, porque no los que conocen su derecho los que lo dejan prescribir, sino más bien aquellos que lo ignoran (sobre un concepto restrictivo de la imposibilidad de actuar, ver Req., 11 de junio de 1918, S. 1922. 1. 217, nota NAQUET).

## SECCIÓN 4

## EFECTOS DE LA PRESCRIPCION

### § 1. — *Adquisición de la propiedad*

2738. PRINCIPIO. — Cuando la prescripción se ha cumplido, el poseedor queda convertido en propietario.

Podría dudarse de esto, por lo menos en lo referente a la *prescripción treintenaria*, leyendo el art. 2262. Este texto se limita a declarar extinguida la acción reivindicatoria del propietario que ha dejado cumplir la prescripción en su contra: "Todas las acciones, tanto reales como personales, quedan prescriptas en treinta años". El derecho francés parece reproducir la vieja regla del derecho romano según la cual la *praescriptio triginta annorum* era una causa de extinción de las acciones. La prescripción es presentada así como una caducidad que alcanza al derecho del propietario, y, desde cierto punto de vista, eso es cierto, puesto que la usucapión debe despojar al propietario de su derecho para investir del mismo al poseedor. Pero la usucapión es al mismo tiempo y sobre todo un medio de adquirir la propiedad por la posesión prolongada. Es lo que resulta de otros textos del Código civil: el art. 712 dice que *la propiedad se adquiere por prescripción*, sin hacer ninguna distinción; el art. 2219, al definir la prescripción, dice asimismo de una manera general que es "un medio de adquirir". En lo que respecta a la prescripción abreviada, el art. 2265 expresa en términos formales que el poseedor del inmueble "adquiere la propiedad del mismo".

## 358  PRESCRIPCIÓN ADQUISITIVA O USUCAPIÓN

y en este caso la prohibición hecha a los jueces por el art. 2223 excluye la hipótesis de una violación de la ley.

Desde luego, el demandado sería considerado, según las circunstancias, como habiendo renunciado a ella (art. 2224). Pero el hecho de no haber empleado en primera instancia el medio ofrecido por la prescripción no hace perder el derecho de oponerlo en alzada.

2744. DERECHO DE LOS ACREEDORES DEL POSEEDOR. — El poseedor no es el único que pueda disfrutar de la excepción de la prescripción; sus acreedores tienen el mismo derecho que él (art. 2225). Pueden tener gran interés en ello; el bien que ha sido usucapido por el deudor tal vez sea lo más importante de su prenda; si les es arrebatado por el reivindicante, corren el riesgo de no ser pagados. Intervendrán por tanto en el litigio para oponer la prescripción cuando el deudor descuide hacerlo. Actuarán entonces *en nombre de su deudor*.

El art. 2225, que parece una repetición superabundante de la regla del derecho común expresada en el art. 1166, es sin embargo útil para despejar una duda. Los casos en que la ley, derogando el principio, rehúsa a los acreedores el ejercicio de ciertas acciones correspondientes al deudor, son aquellos en que una cuestión de afecto, de honor o de conciencia se mezcla con la cuestión de dinero: los acreedores, que desean ser pagados, sacrificarían siempre el aspecto moral al aspecto pecuniario; por eso la ley reserva entonces el ejercicio de su derecho únicamente al deudor. Pero la facultad de oponer la prescripción es precisamente una de esas hipótesis en las cuales una consideración moral o un escrúpulo de conciencia pueden aconsejar al deudor una abstención perjudicial para sus intereses. Los intérpretes tal vez se hubieran pronunciado contra la intervención de los acreedores, pero la ley, que deseaba asegurar a éstos el derecho de oponer la prescripción, se ha pronunciado en su favor con un texto formal.

### § 3. — *Renuncia a la prescripción*

2745. POSIBILIDAD DE RENUNCIAR A LA PRESCRIPCIÓN. — Una renuncia anticipada sería nula (art. 2220), pero no se

## EFECTOS DE LA PRESCRIPCIÓN  359

ve cómo funcionaría. Si el poseedor reconoce que es un simple tenedor, la prescripción se vuelve imposible.

La renuncia a la prescripción adquirida es válida. Aparece como la negativa del poseedor a valerse de un medio de enriquecimiento que le otorga la ley. Por tanto, el art. 2221 presenta erróneamente a la renuncia como "el abandono de un derecho adquirido"; se trata en realidad del *abandono de un medio de adquirir un derecho*, lo que es totalmente diferente.

Se deduce de ello que la renuncia es *un acto unilateral*; no necesita ser aceptado por la otra parte.

Por lo demás, es un acto no solemne que puede hacerse de cualquier manera, expresa o tácitamente (art. 2221). La renuncia *tácita* resulta de hechos que implican la intención de no invocar la prescripción. Es evidente que los jueces no deben admitir a la ligera esa intención, deduciéndola de actos equívocos, que fueran susceptibles de recibir otra interpretación; las renuncias no se presumen (Civ. 31 de enero de 1927, D. H. 1927, 208). Pero la decisión de los jueces de los hechos, que se limitan en eso a interpretar la intención de las partes, escapa a la fiscalización de la Corte de Casación (Cass. 21 de mayo de 1883, D. 84. 1. 163, S. 84. 1. 422).

2746. PUBLICIDAD. — Dentro del sistema de la ley del 23 de marzo de 1855 que había organizado la publicidad de las mutaciones de propiedad inmobiliaria entre vivos de manera de resolver los conflictos de derecho entre los causahabientes a título particular de un mismo autor, la renuncia a la prescripción no debía ser transcripta, ya que no entraña ninguna transferencia de propiedad.

Ha sido, por el contrario, sometida expresamente a publicidad por el decreto-ley del 4 de enero de 1955 (art. 28-8º) que, abrogando la ley del 23 de marzo de 1855, ha sido inspirada por la preocupación de hacer aparecer en el fichero inmobiliario todos los actos y hechos relativos a la situación jurídica del inmueble. Desgraciadamente ha sido descuidada la cuestión de saber cómo podrá ser sancionada, e incluso cómo podrá ser aplicada la nueva regla, cuando el texto del art. 2221, C. civ, sigue sin ser alterado. Bajo el imperio del decreto-ley del 4 de enero de 1955 (art. 30-1º), la sanción del incumplimiento de la formalidad consiste, lo mismo que bajo el imperio de la ley del 23 de mayo de 1955, en la inoponibilidad del acto no publicado. Si por lo tanto la renuncia a la prescripción está incluida en un convenio concertado entre el poseedor y el propietario, la

# EXHIBIT B-25



ELEODORO ROMERO ROMAÑA

# DERECHO CIVIL

## LOS DERECHOS REALES

Editorial PTCM — Lima, Perú

LIMA    1947    PERU

DERECHO CIVIL — LOS DERECHOS REALES

91

sicos, o sea el derecho de usar, gozar y disponer de la cosa y, además, con los siguientes caracteres:

1º—Como un derecho absoluto, es decir en el sentido de conocer el summun de facultades en favor de una persona sobre la cosa, o sea que no cabe un derecho real más amplio que el derecho de propiedad y, al mismo tiempo, que se ejercite sin intervención de nadie y que debe ser respetado por los demás.

2º—Una segunda característica del derecho de propiedad inspirado en el código de Napoleón, que señalaba el código peruano del 52, es el de conceder un derecho exclusivo en el sentido de que el derecho de propiedad no permite otro derecho de propiedad semejante y opuesto sobre el mismo bien. Si una persona tiene la propiedad de una cosa no es posible que haya otra persona con igual derecho sobre ella. Naturalmente, esto no se refiere al condominio, o sea a la situación que se produce cuando dos personas en común ejercitan el derecho de propiedad, porque ésta es una figura jurídica diferente. Tampoco se refiere al caso, admitido en el mismo código, de la división del dominio en útil y directo. Se trata de la exclusividad en el sentido que si una persona tiene un derecho de propiedad, otra no puede tener —al mismo tiempo— ese derecho sobre el bien; porque, aún en el supuesto de que lo mantuviera en su poder creyendo que lo tenía bien adquirido, no sería sino un poseedor de él y no un verdadero propietario.

Esta es una de las más importantes características del derecho de propiedad: la exclusividad, que subsiste hasta hoy.

3º—Una tercera característica es la de la perpetuidad, o sea que ese derecho no debía extinguirse, ni aún con la muerte, ya que todas las legislaciones del mundo admitían la herencia, pudiendo la persona disponer de sus bienes para después de su fallecimiento. Se consideraba que la propiedad sólo se perdía por acto propio, pero no por abandono, salvo que éste determinara el nacimiento de un nuevo derecho sobre el bien adquirido por prescripción. La acción reivindicatoria del propietario ha sido considerada como una acción que podía ejercitarse siempre, esto es, que era imprescriptible y que podía prosperar pese al abandono de la propiedad, a no ser que hubiera nacido sobre ella un nuevo derecho adquirido también por prescripción. A fines del siglo pasado comenzó a sostenerse que la acción reivindicatoria no era imprescriptible y que el derecho para recuperar la propiedad caducaba en el mismo lapso de tiempo en que prescriben las acciones reales. Los autores franceses modernos combaten ardorosamente esta tesis, especialmente Planiol, Ripert y Josserand, y distinguen los derechos reales derivados de la propiedad del derecho mismo de propiedad. Dicen que los primeros pueden perderse por el simple no uso, porque son derechos sobre cosa ajena que aunque la ley tolera, son contrarios al estado normal de las cosas, señalando —por lo mismo— que se extinguen si no se usan durante cierto tiempo. En cambio, con la propiedad no sucede lo mismo; no existiendo motivo alguno para que termine por el simple no uso; perdiéndose únicamente cuando debido al abandono ha estado en manos de un poseedor durante el tiempo necesario para que se produzca la prescripción adquisitiva. Al estudiar la prescripción insistiremos sobre tan importante punto, debiendo sólo mencionar ahora que el código, en el artículo 1168 —inciso 1º—, dispone que la acción real prescribe a los veinte

años, sin distinguir o exceptuar a la acción reivindicatoria; y que el legislador admite también la pérdida de la propiedad por el simple abandono, al expresar en el artículo 822 —inciso 4º— que son del Estado las tierras que han sido abandonadas por el dueño que tuvieron.

4º—Un último carácter, era el de la inviolabilidad. La propiedad se consideraba como un derecho absoluto e invulnerable. Esta característica es la que ha sufrido más los embates del derecho moderno. Hoy día la propiedad está sujeta a limitaciones y restricciones impuestas por el interés colectivo o el interés público.

83.— LA PROPIEDAD EN LAS DOCTRINAS SOCIALISTAS Y EN LOS SISTEMAS COMUNISTAS Y TOTALITARIOS.— El derecho de propiedad después de la Revolución Francesa ha experimentado grandes transtornos, debido, principalmente, a la legislación de la post-guerra (1914) y a la influencia de las doctrinas socialistas. No vamos a hacer la referencia minuciosa de estas doctrinas, pero conviene precisarlas. Las doctrinas socialistas critican la distribución de la riqueza y de la propiedad. Siguiendo a *Karl Marx*, propician la transformación de su organización de individual en colectiva, con la intervención del Estado.

Como consecuencia de la primera guerra mundial en la legislación de los países se observa esta influencia de las doctrinas socialistas y se llegan a consignar, en muchos de ellos, disposiciones de carácter muy avanzado. Tenemos así la Constitución alemana, de Weimar (1919), con la declaración de que la propiedad obliga y que su ejercicio debe ser, al mismo tiempo, un servicio en interés de la colectividad. Consigna, además, numerosas disposiciones que limitan el derecho de propiedad y en su artículo 155 dispone que el aumento de valor de un bien raíz, obtenido sin desembolso de capital o de trabajo, beneficia a la colectividad.

En casi todos los países de Europa se dictaron disposiciones de igual carácter. En México también se consignan disposiciones avanzadas en la Constitución de Querétaro de 1917, en la que se declara que la propiedad de la tierra pertenece a la Nación y sólo ella es la que puede trasmitirla a los particulares. En el código civil mexicano de 1928, se dice que no se puede ejercer el derecho de propiedad de manera que cause daño a un tercero y que es de utilidad pública la expropiación de las tierras. Y la ley de 1920, sobre tierras ociosas, estableció la caducidad temporal del derecho del propietario sobre dichas tierras, autorizándose a las municipalidades para arrendarlas por tres años.

En 1934 se dictó el Código Agrario, que ha sido reemplazado por el que se ha promulgado en 1940. El Ingeniero Gerardo Klinge, autor del trabajo "El Crédito Agrícola Estatal en México", se refiere a la forma como dicho código admite la propiedad sobre las tierras en los siguientes términos:

De acuerdo con el Código Agrario, la propiedad particular no puede exceder de cien hectáreas en terrenos de riego o humedad. Esta extensión puede llegar a 150 hectáreas en tierras dedicadas al cultivo de algodón si reciben riego de avenida fluvial o por sistema de bombeo; y hasta de 300 hectáreas cuando están dedicadas a plantaciones ordenadas de plátano, café, cacao o árboles frutales. El máximo para tierras de secano, pastales, etc., es mayor de acuerdo con equivalencias que señala la ley.

Los núcleos rurales de población que satisfacen las condiciones deter-