# EXHIBIT B-43



Mariana Mould de Pease

# Machu Picchu
## y el Código de Ética de la Sociedad de Arqueología Americana

*Una invitación al diálogo intercultural*

).33
BM/ej.2  Consejo Nacional de Ciencia y Tecnología
CONCYTEC

Pontificia Universidad Católica del Perú
FONDO EDITORIAL 2003

MARIANA MOULD DE PEASE:

para resultar convincente ante los ojos de Leguía, quién estaba empeñado en abrir —autoritariamente— el país al diálogo con el mundo anglosajón. En cumplimiento de esta finalidad, el explorador estadounidense se procuró documentación legal en la que el Poder Ejecutivo había interpretado sesgada y arbitrariamente los *intereses nacionales* para modificar la legislación vigente. Este es un aspecto de la conservación y uso de los bienes culturales muebles de la Nación que no está por estudiarse con mayor detalle (Mould de Pease 2000b: 657; 2001). Por esta razón Bingham debió agenciarse copia del siguiente documento, que se encuentra entre sus Papeles en versión en inglés (grupo 664; caja 2, carpeta 24), ya una primera transgresión al orden jurídico conservacionista surgido de la emancipación:

RESOLUCIÓN SUPREMA

*Lima, junio 16, 1887.*

*Visto el recurso del ingeniero don Augusto R. Berns, súbdito alemán, manifestando el propósito de hacer excavaciones en huacas incásicas y construcciones gentilicas ubicadas en la provincia de la Convención del departamento del Cuzco, proponiendo ceder al Fisco parte del valor que en ellas encuentre, y solicitando especial protección en su persona e intereses y en atención de que no imponiendo gravamen ninguno al Estado las facilidades que solicita el recurrente, puede reportarle aprovechamiento como partícipe del tesoro o valores que se descubran.*

*De acuerdo con lo informado por la Sección del Ramo, y adoptando las indicaciones propuestas por el Ministerio Fiscal en la Vista que precede: acéptase la propuesta mencionada con las condiciones siguientes:*

*1°. Don Augusto R. Berns cede a favor del Estado el diez por ciento del oro, plata y alhajas, o en moneda nacional el equivalente de ese tanto, de todos los objetos que de los referidos metales encuentre y extraiga de las huacas incaicas y construcciones gentilicas que en el departamento del Cuzco se propone explorar y explotar.*

*2°. Serán de propiedad exclusiva de Berns todos los objetos de cobre, barro, madera y piedra cualquiera que sea su mérito artístico, con tal de no que contenga metal de oro o plata, pues las partes que de ellos se encuentre en dichos objetos, serán pesados y valorizados para los efectos del artículo anterior.*

*3°. Los objetos de arte de metales preciosos, podrán pertenecer en lo absoluto a Berns, previa oblación que haga al Fisco del diez por ciento que corresponde al*

134

MACHU PICCHU Y EL CÓDIGO DE ÉTICA DE LA SOCIEDAD DE ARQUEOLOGÍA AMERICANA

*Estado, deduciendo del valor total del objeto después de pesado y apreciada la ley del metal.*

*4°. Tanto los enumerados objetos, como los designados en el artículo segundo, serán de libre disposición para Berns, quedando con la facultad de venderlos o exportarlos, sin otro gravamen que el que fija el arancel de Aduanas, por ser derechos ordenados por leyes vigentes.*

*5°. Se reserva el Gobierno la facultad de nombrar, cuando lo crea conveniente, la persona interventora a la que dará las necesarias instrucciones para que de acuerdo con Berns, pueda tasar, valorizar y hacer efectiva la entrega del diez por ciento que corresponde al Estado.*

*6°. El Prefecto del Departamento del Cuzco designará entre tanto una persona que acompañe a Berns y presencie los trabajos de excavación que ejecute, dando cuenta de todas las circunstancias con que se realicen y aviso detallado de lo que se descubra en caso de no hallarse aún presente la comisión que nombre el Gobierno. El haber o remuneración de este interventor provisional será de cuenta de Berns.*

*7°. El Gobierno se obliga a poner a disposición de Berns la fuerza pública que crea necesaria para la protección de la Empresa, el resguardo de los intereses y defensa de su persona y trabajadores que emplee. Esta fuerza será remunerada y pagada por Berns, como lo ofrece, con arreglo al presupuesto del cuerpo a que pertenezca; siendo también a su obligación proporcionarle la conveniente alimentación.*

*8°. En caso que Berns formase compañía o sociedad para esta empresa, él la quedará obligada a someterse a las condiciones estipuladas, sin que le sea permitido pedir modificaciones, aclaratorias o suspensión de las cláusulas consignadas.*

*9°. Toda dificultad que se suscite en el cumplimiento de este convenio, será resuelta por los Tribunales de la República, sin que haya lugar a reclamación diplomática de ninguna clase.*

*Otórguese la escritura pública respectiva previa aceptación de Don Augusto R. Berns de las cláusulas que preceden, las que tendrían lugar de minuta.*

*Regístrese y comuníquese.*

*Rúbrica de S.E.*

*IRIGOYEN*

También es pertinente reproducir aquí el Decreto Supremo del 27 de abril de 1893 que Hiram Bingham hizo traducir al inglés y que actualmente se conserva en el archivo de la Biblioteca Sterling de la Universidad de Yale. Este D.S. no se encuentra publicado en el segundo semestre del

135

# EXHIBIT B-44



# Colección
## DE
## LEYES, DECRETOS
### Y ORDENES
#### Publicadas en el Perú,

### DESDE SU INDEPENDENCIA
### EN EL AÑO DE 1821,

Y ABRAZA EL TIEMPO DESDE 1.° DE ENERO DE 1838,

*Hasta 31 de Diciembre de 1841.*

### TOMO 6.°

## LIMA:
### IMPRENTA DE JOSE MASIAS.
## 1842.

...blica, devolviéndole el decreto indi...do.—Dios guarde á US.—*Jervacio Alvarez*, Secretario—*Agustin Galia...*, Secretario."

Y de órden de la misma lo tras...bimos á US. para intelijencia del Supremo Gobierno y en contestacion á su citada nota.

Dios guarde á US.—*Bernardo Soffia*, Secretario.

Cúmplase: y al efecto publíquese, y comuníquese á quienes corresponda. Rúbrica de S. E.—*Agustin Guillermo Charun.* (1) (Per. tom. 3.° número 41.)

## 340.

*Ministerio de Gobierno y relaciones exteriores.—Secretaria del Congreso Jeneral—Huancayo á 29 de Noviembre de 1839.*

Señor Ministro de Gobierno y Relaciones Exteriores.

Señor Ministro.

El Congreso Jeneral en sesion de 27 del corriente ha resuelto—"Que todas las causas civiles y criminales seguidas en tiempo de la usurpacion de Santa-Cruz y en que los deudos de este hicieron de parte, se repongan al estado de demanda; ó al que tenían cuando principió aquella época"—Tenemos el honor de comunicarlo á U.S. para que se sirva ponerlo en conocimiento de S. E. el Presidente Provisorio de la República.

Dios guarde á U. S.—*Jervacio Alvares—Agustin Galiano.*—Secretario.

Lima Abril 6 de 1840.

Cúmplase lo resuelto por el Congreso Jeneral. Comuníquese y publíquese.—*Agustin Gamarra—M. Ferreyros.* (2) (Per. tom. 3.° núm. 29.)

## 341.

MINISTERIO DE GOBIERNO Y RELACIONES EXTERIORES.

*Secretaria del Congreso Jeneral—Huancayo 28 de Noviembre de 1839.*

Al Sr. Ministro de Estado en el Departamento de Gobierno y Relaciones Exteriores.

Sr. Ministro—El Congreso en sesion de esta fecha ha resuelto que todos los peruanos que quieran trabajar en el descubrimiento de tesoros ocultos, conocidos con el nonbre Huacas, puedan hacerlo libremente sin estar obligados á pagar por los que descubrieren los derechos que exijen los leyes antíguas.

Lo comunicamos á U. S. para que se sirva ponerlo en conocimiento de S. E. —Dios guarde á U. S.—*Jervacio Alvarez*, Diputado Secretario—*Agustin Galiano*, Diputado Secretario.

Lima 9 de Enero de 1840—Cúmplase y dénse las órdenes convenientes. —*Agustin Gamarra—M. Ferreyros*. (3) (Per. tom. 3.° núm. 6.)

## 342

MINISTERIO DE GOBIERNO Y RELACIONES XETERIORES.

*Secretaria de la Comision Diplomática del Congreso---Lima Mayo 26 de 1840.*

Al Sr. Ministro de Estado en el Departamento de Gobierno y Relaciones Exteriores.

Señor Ministro.

El Congreso en Sesion de 28 de Noviembre de 1839 resolvió lo siguiente:

"En la ciudad de Puno, y en las demás poblaciones que carezcan de fondos municipales, y no tengan casas de seguridad, se construirán cárceles seguras y comodas, tomandose los fondos necesarios de las Tesorerias Departamentales respectivas, y precediendo á la plantificacion de la obra, un presupuesto formado por dos peritos, que nombrarán los Prefectos en union de los Administradores del Tesoro, quienes encargarán la direccion de dicha obra á personas honradas é intelijen-

---

(1) Corriente.
(2) Corriente.

(3) Corriente.

3

# EXHIBIT B-45

DECRETO-LEY N° 6938

**Declarando que el tesoro y toda cosa de valor arqueológico enterrados, cuyo dueño no puede ser conocido, así se hallen en terreno público o privado, corresponden al Estado.**

LA JUNTA DE GOBIERNO

Considerando:

Que deben volver al Estado los bienes, ocultos o enterrados, que no tengan dueño conocido;

Que la propiedad de los tesoros ocultos debe imputarse, jurídicamente, al dominio exclusivo del Estado;

Que el dueño superficial o el descubridor no adquieren por ocupación estos tesoros, puesto que sólo son susceptibles de apropiación las cosas que se encuentran en la superficie y no tienen dueño conocido, mas no las ocultas;

Decreta:

1°—El tesoro y toda cosa de valor arqueológico enterrados, cuyo dueño no puede ser conocido, así se hallen en terreno público o privado, corresponden al Estado;

2°—Sólo el Estado puede buscar un tesoro en terreno eriazo, labrado o edificado, abonando a justa tasación los perjuicios que se le irroguen a los propietarios;

3°—El Estado podrá conceder un premio prudencial a los descubridores y a los propietarios del terreno o edificio, teniendo en cuenta la cuantía del tesoro y las circunstancias que rodeen su descubrimiento, sin que este premio exceda del diez por ciento del valor del tesoro u objeto hallado;

4°—El mismo premio podrá concederse al que denunciare la extracción clandestina de un tesoro oculto o de objetos de valor arqueológico;

5°—Deróganse los artículos 522, 523, 524 y 525, del Código Civil y los artículos 56, 57 y 59 del Código de Aguas, y todas las demás disposiciones que se opongan al presente decreto.

Dado en la Casa de Gobierno, en Lima. a los quince días del mes de noviembre de mil novecientos treinta.

LUIS M. SANCHEZ CERRO.

**Gustavo A. Jiménez. — E. Montagne. Armando Sologuren. — J. Alejandro Barco. — Ricardo E. Llona. — E. Castillo. — C. Rotalde.**

Por tanto: mando se imprima, publique, circule y se le dé el debido cumplimiento.

Dado en la Casa de Gobierno, en Lima. a los quince días del mes de noviembre de mil novecientos treinta.

Rúbrica del Presidente de la Junta de Gobierno.

**Sologuren.**

# EXHIBIT B-46

# REVISTA DEL COMERCIO DEL PERU

ORGANO DE LA ASOCIACION DE COMERCIANTES
FUNDADA EN EL AÑO 1922

CASILLA POSTAL No. 1938      TELEFONO No. 32967
OFICINAS: EDIFICIO CANEVARO No. 304 — PLAZA SAN MARTIN No. 166

## COMPENDIO

## DE LEGISLACION DE

## 1950



PONTIFICIA UNIVERSIDAD CATOLICA DEL PERU
REVISTAS Y PUBLICACIONES
BIBLIOTECA

*

## LOS SUELDOS BASICOS DE LOS SERVIDORES DEL ESTADO, SOLO PODRAN SER MODIFICADOS POR LEY

El Presidente de la Junta Militar de Gobierno,

CONSIDERANDO:

Que algunas entidades administrativas, han efectuado aumento de sueldos a sus servidores, modificando de hecho los presupuestos administrativos;

Que ese procedimiento se encuentra en disconformidad con lo dispuesto en el Art. 20º de la Ley del Presupuesto;

DECRETA:

Los sueldos básicos de los servidores del Estado, que figuran en el Presupuesto General de la República, o en los Presupuestos Administrativos, sólo podrán ser modificados por ley.

Dado en la Casa de Gobierno, en Lima, a los seis días del mes de julio de mil novecientos cincuenta.

ZENON NORIEGA.

Emilio Pereyra.

## LA SECCION CONTROL DE VITICULTURA SERA DEPENDENCIA DE LA INSPECCION FISCAL DE BEBIDAS ALCOHOLICAS

El Presidente de la Junta Militar de Gobierno,

CONSIDERANDO:

Que por Resolución Suprema de fecha 25 de octubre último (1) se ha creado la Inspección Fiscal de Bebidas Alcohólicas y Gaseosas, cuya función es ejercer el control tributario y cualitativo de los productos de esta rama de la industria nacional;

Que es conveniente que dicho control se centralice en un solo Organismo del Estado, con el fin de establecer la uniformidad de procedimientos destinados al objeto que se persigue;

Que el control de las bebidas alcohólicas y gaseosas, actualmente encomendado a la Dirección General de Agricultura, no es función propia de esa Repartición Administrativa, cuyos servicios técnicos deben concretarse a la orientación y fomento de las actividades agrícolas, sin intervenir en lo relacionado con los intereses del Fisco, desde el punto de vista tributario, lo que es necesario cautelar;

Que para la mejor percepción de las rentas fiscales es conveniente que la acotación de los impuestos establecidos por las Leyes 11000 y 11041, (2) se realice basándose en procedimientos técnicos, que permiten determinar con precisión la proporción de las materias primas que entren en la composición de las bebidas alcohólicas y gaseosas, para los efectos del control de los rendimientos industriales;

DECRETA:

1º—La Sección Control del Departamento de Viticultura y Enología, de la Dirección General de Agricultura, pasará a ser dependencia de la Inspección Fiscal de Bebidas Alcohólicas y Gaseosas, con sus Instalaciones, Dependencias y presupuestos de sostenimiento.

2º—Autorízase al Ministerio de Hacienda y Comercio para consignar en el Presupuesto General de la República para 1951 las partidas correspondientes en el Capítulo de la Dirección General de Hacienda.

Dado en la Casa de Gobierno, en Lima, a los seis días del mes de julio de mil novecientos cincuenta.

ZENON NORIEGA.

Emilio Pereyra.

## NUEVAS DISPOSICIONES PARA CONTROLAR EL PATRIMONIO FISCAL

El Presidente de la Junta Militar de Gobierno,

CONSIDERANDO:

Que en la fecha se ha restituído a la Repartición de Bienes Nacionales, la categoría de Dirección, reforma necesaria para darle la autoridad que le permita exigir el estricto cumplimiento de las diversas disposiciones dictadas para cautelar el patrimonio mobiliario e inmobiliario del Estado;

Que la reforma debe completarse señalando precisamente las funciones y atribuciones de la Dirección de Bienes Nacionales, reuniendo en un Reglamento las numerosas disposiciones dictadas sobre bienes del Estado;

Que esa reglamentación es de urgente necesidad para el mejor registro, control y defensa de la propiedad fiscal;

DECRETA:

1º—Es función primordial de la Dirección de Bienes Nacionales, el registro, control, administración y defensa del patrimonio mobiliario e inmobiliario fiscal;

2º—Son obligaciones y atribuciones de la Dirección de Bienes Nacionales;

  a)—Llevar el Margesí de Bienes Nacionales;

  b)—Intervenir en todos los contratos referentes a inmuebles en los que el Estado sea parte;

  c)—Aprobar toda venta o permuta de propiedad fiscal, cuando ella sea procedente;

  d)—Aprobar toda afectación de uso de propiedad fiscal;

  e)—Otorgar todo arrendamiento de propiedad fiscal;

---

(1) Pág. 367 del Tomo 1949.
(2) Págs. 115 y 216 del Tomo 1949.

f)—Otorgar las autorizaciones para la búsqueda de tesoros en propiedad fiscal;

g)—Defender el patrimonio mobiliario e inmobiliario fiscal contra las usurpaciones de particulares; y

h)—Denunciar a los funcionarios que incurran en responsabilidad al contratar o disponer indebidamente de la propiedad mobiliaria o inmobiliaria fiscal.

### Margesí de bienes nacionales

3º—El Margesí de Bienes Nacionales comprende:

a)—El Margesí de Bienes Inmuebles; y
b)—El Margesí de Bienes Muebles.

### Margesí de bienes inmuebles

4º—Este Margesí se llevará mediante inscripciones manuscritas en Libros Matrices y comprenderá:

a)—El Libro de Predios;
b)—El Libro de Naves;
c)—El Libro de Ferrocarriles; y
d)—El Libro de Muelles y Diques.

### Libro de Predios

5º—En el Libro de Predios se inscribirán sólo los que hayan sido incorporados al dominio privado del Estado;

6º—El Libro de Predios tendrá un tomo por cada Departamento y uno para las propiedades en el extranjero y en cada uno de ellos las inscripciones serán numeradas correlativamente.

7º—Las inscripciones se harán por el mérito de los documentos que acrediten incontrovertiblemente el ingreso del bien al patrimonio fiscal y que permitan individualizarlo claramente;

8º—Las documentaciones que hayan dado mérito a una inscripción serán archivadas en Legajos numerados correlativamente, con el mismo número de la inscripción en el Libro Matriz.

9º—Las inscripciones en los Libros Matrices indicarán la ubicación, área, linderos y valor del inmueble; su aplicación, el medio de adquisición y el documento público que la acredite y la inscripción en el Registro de la Propiedad Inmueble si la hubiere;

10º—Las modificaciones que sufran los inmuebles en su área y linderos o en su aplicación, se anotarán como Apéndices a los asientos originales, respaldándolos con los documentos pertinentes;

11º—Las documentaciones que respaldan las inscripciones en los Libros Matrices, deben permanecer archivadas permanentemente en la Dirección de Bienes Nacionales y sólo se permitirá su envío a los Registros Públicos para la inscripción del de-



# Firestone

LLANTAS Y CAMARAS PARA AUTOMOVILES; CAMIONES, MAQUINARIA CAMINERA, TRACTORES, MOTOCICLETAS Y BICICLETAS.

## BATERIAS DE CAJA DE CAUCHO

TODA CLASE DE REPUESTOS Y ACCESORIOS PARA AUTOMOVILES Y CAMIONES

ARTICULOS DE USO DOMESTICO: REFRIGERADORAS, RADIOS, COCINAS ELECTRICAS, E IMPLEMENTOS PARA COCINA. HERRAMIENTAS DE CAMPO Y CONSTRUCCION.

## J. P. BURASCHI, S. A.

Avda. ALFONSO UGARTE 1326 — TEL. 11614

recho del Estado o a los Procuradores Generales de la República cuando se trate de la defensa de los derechos de propiedad de los predios a que se refieren;

Para las otras Reparticiones Públicas, harán plena fe las copias de las titulaciones expedidas por la Dirección de Bienes Nacionales.

### Libro de Naves

12º—En el Libro de Naves se inscribirán las que estén destinadas al servicio civil, exceptuándose la inscripción de las aplicadas al servicio de la Marina de Guerra.

13º—Las inscripciones en el Libro de Naves se harán en la forma indicada en el Art. 7º, archivándose las documentaciones respectivas en la forma indicada en el Art. 9º;

14º—Las inscripciones comprenderán la descripción de la nave, en armonía con el Art. 22º, inciso 1º del Código de Comercio;

15º—Son de aplicación a este Libro las disposiciones de los Arts. 10º y 11º;

### Libro de Ferrocarriles

16º—En este Libro se inscribirán todos los ferrocarriles de propiedad fiscal y los de propiedad particular que al término de un plazo determinado, deberán ingresar al dominio del Estado;

17º—Las inscripciones se harán por el mérito de las declaraciones que presentarán las entidades encargadas de la construcción de la vía;

18º—La inscripción comprenderá sólo los terrenos ocupados por las vías, las estaciones, los depósitos y las dependencias anexas, correspondiendo al Margesí de Bienes Muebles el registro del material rodante;

19º—Son de aplicación las disposiciones de los artículos 8º, 9º, 10º y 11º;

### Libro de Muelles y Diques

20º—En este Libro se inscribirán todos los Muelles y Diques de propiedad fiscal y los de propiedad particular que deban pasar al dominio del Estado al vencimiento de un plazo determinado;

21º—La inscripción comprenderá los Muelles y Diques propiamente dichos, señalando sus características principales y los edificios inseparables de los mismos, cuya existencia dependa de la existencia del Muelle o Dique;

22º—Los inmuebles aplicados al servicio de un Muelle o Dique pero que no formen parte integrante de los mismos y que libremente puedan ser aplicados a un servicio diferente, serán materia de inscripción en el Libro de Predios;

23º—Son de aplicación a este Libro las disposiciones de los Arts. 8º, 9º, 10º y 11º;

### Disposiciones Generales

24º—Todas las Reparticiones de la Administración, bajo responsabilidad de quienes las tienen a su cargo, deberán proporcionar a la Dirección de Bienes Nacionales, todos los datos que ella solicite para las inscripciones que deben hacerse en los Libros antes enumerados;

25º—Bajo la misma responsabilidad, las Reparticiones de la Administración deberán remitir a la Dirección de Bienes Nacionales las titulaciones de bienes del Estado que posean.

Los documentos que necesiten para su servicio, serán reemplazados por las copias que expida la Dirección de Bienes Nacionales.

### Margesí de Bienes Muebles

26º—El Margesí de Bienes Muebles comprenderá los muebles y vehículos aplicados al servicio de todas las Reparticiones del Estado;

27º—Este Margesí se llevará a base de los inventarios que remitan las diversas Reparticiones;

28º—El Margesí se llevará en Tarjetas especiales y por separado los muebles propiamente dichos y los vehículos; y mediante un Registro por cada Ministerio o Repartición Fiscalizada;

29º—En el Registro se abrirá una Tarjeta por cada clase de mueble, anotando el número de unidades que posee cada Dependencia y su valor;

30º—Anualmente y a base de las informaciones que remita cada Ministerio, se anotarán en las mismas Tarjetas, las modificaciones que hayan sufrido los inventarios por bajas, transferencias o adquisiciones de nuevos muebles;

31º—En los casos de bajas o transferencias, los Ministerios deberán remitir copias de las Resoluciones que las autorizan;

32º—Todos los bienes muebles dados de baja, deben ser puestos a disposición de la Dirección de Bienes Nacionales en la Capital de la República y de las Tesorerías Fiscales en otros Departamentos, para su venta en pública subasta con intervención de Martillero Público.

En los lugares donde no exista Martillero Público, la venta se hará con intervención del Juez de Paz;

33º—En el Registro de Vehículos se abrirá una Tarjeta para cada uno de ellos, indicando sus características principales (marca, número de motor y de chassis, tipo, color, número de rodaje, etc.)

### Intervención en los Contratos sobre Inmuebles

34º—Todos los Ministerios pueden aprobar la compra de Inmuebles, pero hecha la aprobación deben remitir el expediente respectivo a la Dirección de Bienes Nacionales para que redacte la minuta correspondiente o para que exprese su aprobación a la que se haya preparado;

35º—No se otorgará ninguna escritura de compra mientras el vendedor no presente copia literal de dominio y certificado de gravámenes expedidos por el Registro de la Propiedad o, en defecto de la inscripción, títulos suficientes para acreditar fehacientemente su propiedad.

36º—Todas las escrituras de compra de bienes por el Estado, deben otorgarse ante el Notario de Hacienda;

37º—La Caja de Depósitos y Consignaciones, Departamento de Recaudación ni la Superintendencia de Contribuciones, darán curso a ninguna minuta de compra que no lleve la aprobación de la Dirección de Bienes Nacionales.

Los Notarios tampoco elevarán a escritura pública las minutas que no lleven esa conformidad;

38º—Los funcionarios que intervengan en un contrato de compra, cualquiera que sea su categoría, son responsables administrativa, civil y criminalmente, de los perjuicios que irroguen al patrimonio del Estado, a menos que dejen constancia por escrito en el expediente, de su oposición al contrato;

Sin perjuicio de la sanción administrativa correspondiente, el Procurador General de la República iniciará acción civil y criminal contra los culpables de dolo, para perseguir la reparación del perjuicio sufrido por el Estado y la pena del culpable;

39º—Toda compra debe ser aprobada por Resolución Suprema.

### Venta o Permuta de Propiedad Fiscal

40º—Toda venta o permuta de Propiedad fiscal debe ser aprobada por Resolución Suprema expedida por la Dirección de Bienes Nacionales, siendo nulas las aprobadas por Reparticiones diferentes.

Se exceptúan de esta disposición las ventas de acuerdo con las leyes especiales de irrigación y de terrenos de montaña;

41º—Las ventas, salvo los casos autorizados por leyes especiales y las permutas, sólo se acordarán por iniciativa del Ejecutivo, de acuerdo con sus intereses y sus necesidades, quedando prohibida la tramitación de toda solicitud de particulares para celebración de esos contratos;

42º—La venta de propiedad fiscal, salvo los casos señalados en leyes especiales debe hacerse en pública subasta, ante las Juntas Departamentales de Almonedas, sirviendo de base en primera convocatoria, el valor total de la tasación practicada por el Perito nombrado por la Junta y en las otras convocatorias, se rebajará en 10% la base de la convocatoria anterior;

43º—La subasta deberá ser aprobada por Resolución Suprema por la Dirección de Bienes Nacionales, para que pueda otorgarse la escritura de venta a favor del mejor postor;

44º—En las permutas se tomará como base el valor señalado en la tasación practicada por los Ingenieros del Estado, con informe del Cuerpo Técnico de Tasaciones;

45º—No podrá aprobarse una permuta, cuando el valor señalado al bien que entrega el Estado, sea superior en un 25% al valor del bien que reciba;

46º—Cuando el valor del bien del Estado sea superior, será condición indispensable de la permuta, que el otro contratante abone en efectivo la diferencia del valor que existe a su favor;

47º—El Fiscal en lo Administrativo de la Corte Suprema debe pronunciarse en todos los expedientes sobre venta o permuta de propiedad fiscal, antes de expedirse la Resolución Suprema que les ponga término;

48º—Son de aplicación a las ventas y permutas las disposiciones de los Arts. 35º, 36º, 37º y 38º;

### Afectaciones de Uso

49º—Las afectaciones de uso de propiedad fiscal sólo pueden ser otorgadas por la Dirección de Bienes Nacionales y por Resolución Suprema.

Toda afectación acordada por Repartición diferente, es nula;

50ª—Las afectaciones de propiedad fiscal sólo pueden otorgarse a favor de las Reparticiones del Estado para el funcionamiento de sus Dependencias o a favor de Instituciones particulares que desempeñen una labor que signifique una colaboración con la función social del Estado;

51º—En toda afectación de uso, se indicará el fin para el que se otorga y la Dirección de Bienes Nacionales procederá a reasumir la administración del bien, tan pronto deje de ser aplicado a ese fin;

52º—Igualmente la Dirección de Bienes Nacionales reasumirá la administración de todo bien afectado, cuando transcurra un año desde la fecha de la afectación y no se aplique al fin para el que se otorgó;

53º—Cuando se trate de formalizar por escritura pública las afectaciones de uso a favor de particulares, son de aplicación las disposiciones de los Arts. 36º y 37º

El Registro de la Propiedad Inmueble por su parte, no inscribirá ninguna afectación de uso de propiedad fiscal, si la escritura correspondiente no lleva la aprobación de la Dirección de Bienes Nacionales;

54º—La Dirección de Bienes Nacionales llevará un Registro especial de las afectaciones de uso;

### Arrendamientos

55º—Sólo la Dirección de Bienes Nacionales puede otorgar contratos de arrendamiento de propiedad fiscal, siendo nulos los otorgados por otras reparticiones;

56º—Los arrendamientos se otorgarán por Resolución Ministerial cuando la merced conductiva señalada no exceda de S|. 2,500.00 al año y por Resolución Suprema cuando exceda de esa cantidad;

57º—La merced conductiva no podrá ser inferior al 6% del valor de la propiedad cuando se trate de fundos rústicos o al 10% cuando se trate de fundos urbanos;

58º—A ningún arrendamiento se le podrá fijar una duración superior a diez años;

59º—Todo producto de arrendamiento de propiedad fiscal debe ingresarse al Tesoro Público, con abono al renglón presupuestal de Bienes Nacionales;

### Búsqueda de Tesoros

60º—Las autorizaciones para la búsqueda de tesoros en propiedad fiscal, sólo podrán ser otorgadas por la Dirección de Bienes Nacionales y por Resolución Ministerial;

61º—Cuando se trate de buscar tesoros en fincas, la autorización sólo se concederá cuando las labores de búsqueda no comprometan la estabilidad del inmueble y siempre que el solicitante cumpla con empozar a orden de la Dirección de Bienes Nacionales el valor de las obras de restitución del inmueble a su estado primitivo, según tasación del Ingeniero del Estado, suma que se le devolverá si ejecuta esas obras por su cuenta en un plazo de noventa días desde que se ponga término a la búsqueda o que se aplicará a la ejecución de esas obras por cuenta del Estado, en caso contrario;

62º—Cuando se trate de buscar tesoros en terrenos urbanos, la autorización sólo se concederá previo el empoce de que trata el artículo anterior, que quedará sujeto a las mismas condiciones;

63º—La autorización para la búsqueda en terrenos dedicados a la agricultura se otorgará bajo las mismas condiciones señaladas en los artículos precedentes y no podrá abarcar una área superior de 10,000 m2.

64º—Tratándose de búsquedas en terrenos eriazos, no se exigirá la constitución del depósito, pero tampoco se otorgará sobre una área superior a 10,000 m2.;

65º—Las autorizaciones para la búsqueda de tesoros en fincas, se otorgarán por el plazo de un año y no podrán prorrogarse; y para la búsqueda en terrenos, se otorgará por el plazo de dos años, pudiendo prorrogarse sólo por una vez, por un período igual, si el descubridor acredita la inversión de capitales que sufrirán grave perjuicio con la paralización de las obras;

66º—En ningún caso podrá concederse autorización para la búsqueda de tesoros en zonas arqueológicas o en los edificios declarados monumentos nacionales;

### Defensa del Patrimonio Fiscal

67º—A la Dirección de Bienes Nacionales compete la cautela y defensa del patrimonio mobiliario e inmobiliario fiscal, para asegurar su permanencia en el dominio del Estado;

68º—Todas las Reparticiones de la Administración y las autoridades locales deben proporcionar inmediatamente a la Dirección de Bienes Nacionales los informes que solicite sobre la permanencia en el dominio del Estado, de sus bienes muebles e inmuebles;

69º—Comprobada una usurpación de propiedad, la Dirección de Bienes Nacionales dará cuenta inmediatamente al Ministro de Hacienda para que se expida la Resolución que encargue al Procurador General de la República la iniciación de la acción judicial correspondiente;

---

(1) Pág. 2 del Tomo 1941.

### Denuncia contra Funcionarios Responsables

70º—Cuando la Dirección de Bienes Nacionales compruebe que un Funcionario, de cualquier categoría, ha incurrido en responsabilidad en perjuicio del patrimonio del Estado, al celebrar contratos sobre bienes muebles e inmuebles o favoreciendo o permitiendo su sustracción, ocultamiento o destrucción, dará cuenta al Ministro de Hacienda para que solicite del Ministro del Ramo a que pertenece el Funcionario, la respectiva sanción administrativa y expida la Resolución que encargue al Procurador General de la República la iniciación de las acciones judiciales correspondientes para que se repare el perjuicio ocasionado al patrimonio fiscal y se aplique al culpable la sanción que le corresponda.

Dado en la Casa de Gobierno, en Lima, a los seis días del mes de julio de mil novecientos cincuenta.

**ZENON NORIEGA.**

**Emilio Pereyra.**

---

## LOS BANCOS DEBEN REMITIR AL FISCO COPIA DE LOS BALANCES QUE SOLICITEN A SUS CLIENTES PARA LA CONCESION DE CREDITOS

El Presidente de la Junta Militar de Gobierno,

CONSIDERANDO:

Que es costumbre de los bancos comerciales exigir para la concesión de créditos a los industriales o comerciantes que los soliciten, la presentación de los correspondientes balances de sus actividades;

Que se ha observado, en muchos casos que los referidos solicitantes no cumplen con la obligación legal de presentar anualmente sus balances a la administración tributaria, y en otros, que los resultados que aparecen en aquellos que son entregados a las instituciones bancarias difieren de los consignados en los que se formulan para la Superintendencia de Contribuciones;

Que, en consecuencia, es indispensable establecer el contralor tributario de los balances que se presenten a las instituciones de crédito con los fines indicados; y

En armonía con lo dispuesto en el Art. 9º de la Ley No. 9245, (1) sobre medidas para impedir la evasión fiscal;

DECRETA:

1º—Cuando los Bancos comerciales o del Estado exijan a personas naturales o jurídicas la presentación de sus balances, con el fin de conceder créditos o realizar operaciones análogas, deberán remitir una copia auténtica de los mismos a la Superintendencia de Contribuciones con el objeto de que se compruebe por ésta la conformidad con los presentados a ella.

2º—En los casos de incumplimiento de los bancos, de lo dispuesto en el artículo anterior, éstos serán sancionados con mul-

# EXHIBIT B-47

[Columna izquierda — fragmentos parciales del margen recortado:]

nbre de 2000
por don Ma-
de fojas dos
mil novecien-
Multa de Tres
a las costas y
xto de la pre-
seguidos con
Prescripción
Q. ALMEIDA
155

TOS; y CON-
reúne los re-
ientisiete del
I; Segundo.-
nuncia a) la
artículo dos-
ales de nuli-
la Ley veinti-
ides Campe-
itoriedad para
a la primera
la ha servido
nido el Cole-
ecto a la se-
or cuanto in-
norma no es
ilares no ha-
so la Comu-
no reuniendo
E el recurso
atro por don
de fojas tres-
de mil nove-
no Villegas
RON al recu-
de Referen-
iginados del
ente resolu-
S. BELTRAN
ORTA R. C-

; y CONSI-
nple con los
entisiete del
Segundo.-
en la causal
en el inciso
Adjetivo; Ter-
n la senten-
ano del Títu-
del Código
co de la Ley
se que sien-
normas de
de; Cuarto.-
lo veintidós
treintinueve
cia no se ha
empero, en
ico se esta-
pronunciado
por el cual
ito.- que, a
a las prue-
ación versa
xclusión de
las cuales:
terpuesto a
urand, con-
o, su fecha
; en los se-
la Sánchez
recurrente
ncla Proce-
lei recurso;
ución en el
LTRAN Q.
R. C-23857

SIDERAN-
quisitos de
Código Pro-
e, el artícu-
ndo que se
cuál de las
se susten-
especto de
del presen-
ma clara y
trescientos
ifirmar que
nétrico y la
esto es de
rentinueve
iente visa-

[Columna central:]

dos por la Autoridad Municipal; es decir hace referencia a la valoración de la prueba lo cual no es materia de este extraordinario recurso; razones por las cuales declararon IMPROCEDENTE el recurso de casación interpuesto a fojas ciento noventiuno, contra la sentencia de vista de fojas ciento ochenticuatro, su fecha veintidós de diciembre de mil novecientos noventiocho, en los seguidos por don Ricardo Añorga Zamudio, contra la Cooperativa de Vivienda "Las Sagitarias" Limitada, sobre Prescripción Adquisitiva; CONDENARON al recurrente al pago de una multa ascendente a tres Unidades de Referencia Procesal; así como al pago de costos y costas originados del recurso; ORDENARON se publique el texto de la presente resolución en el Diario Oficial El Peruano; y los devolvieron. SS. BUENDIA G. BELTRAN Q. ALMEIDA P. SEMINARIO V. ZEGARRA Z. C-23858

**CAS. Nº 0753-99 AREQUIPA CAMANA** 04-07-2000 VISTOS; y CONSIDERANDO: Primero.- Que el recurso de casación interpuesto por el demandante, ha cumplido con los requisitos de forma previstos en el artículo trescientos ochentisiete del Código Procesal Civil, para su admisibilidad; Segundo.- Que en cuanto a los requisitos de fondo, se invocan genéricamente las causales contenidas en los numerales primero y segundo del artículo trescientos ochentiséis del Código Adjetivo; Tercero.- Que estando a los fines de la casación y su carácter formal, se requiere que el impugnante, de manera clara y precisa señale las causales en las que ha incurrido la resolución cuestionada y del mismo modo cumpla con sustentarlas citando las normas involucradas, aspectos que no han sido observados en el presente, toda vez que este se ha restringido a la acreditación de la titularidad del bien materia de litis; Cuarto.- Que en consecuencia no reuniendo el medio impugnativo, los requisitos de fondo establecidos en el artículo trescientos ochentiocho del Código Procesal Civil; declararon IMPROCEDENTE el recurso de casación interpuesto por don Alberto Eufemio Martínez Chávez, a fojas cuatrocientos setenta, contra la sentencia de vista de fojas cuatrocientos sesenticuatro, su fecha doce de marzo de mil novecientos noventinueve; CONDENARON al recurrente a la multa de tres unidades de referencia procesal, así como a las costas y costos originados con la tramitación del recurso; ORDENARON que se publique el texto de la presente resolución en el Diario Oficial El Peruano; en los seguidos con doña Angela Olga Martínez Viuda de Martínez, sobre Nulidad de Escritura Pública y otros; y los devolvieron. SS. BUENDIA G. BELTRAN Q. ALMEIDA P. SEMINARIO V. ZEGARRA Z. C-23859

**CAS. Nº 0684-99 SAN MARTIN** 21-06-2000 VISTOS; y CONSIDERANDO: Primero.- que, el recurso de casación interpuesto cumple con los requisitos de forma que señala el artículo trescientos ochentisiete del Código Procesal Civil, para su admisibilidad; Segundo.- que, respecto a los requisitos de fondo, el recurrente invoca las causales de: a) Inaplicación de los artículos mil setecientos veintiocho, mil setecientos treinta, mil setecientos treinticinco, mil setecientos treintiséis y mil setecientos treintisiete del Código Civil, y b) contravención a las normas que garantizan el derecho a un debido proceso en el sentido que se ha vulnerado lo dispuesto en los artículos ciento ochentiocho, ciento ochentinueve y ciento noventiséis del Código Procesal Civil; Tercero.- que, respecto a la primera causal el recurrente señala que de los actuados la Sala Superior no ha tenido en cuenta que el predio sub litis fue entregado por el demandado al actor en calidad de comodato; Cuarto.- que, en relación a la segunda causal señala que no se ha determinado a que tipo de mejoras corresponden las realizadas en el predio sub litis, si estas han incrementado el valor de dicho bien, quien ha efectuado las supuestas mejoras o la fecha en que estas hayan sido realizadas; supuestos que como se puede apreciar inciden en el criterio valorativo realizado por las instancias de mérito; Quinto.- que, el recurso de casación esta limitado solo a cuestiones de puro derecho, no pudiendo realizar una nueva apreciación de los elementos fácticos actuados en las instancias de mérito, pues de lo contrario se extralimitaría en sus fines; Sexto.- que, siendo ello así el recurso de casación no cumple con los requisitos de fondo establecidos en el inciso segundo del artículo trescientos ochentiocho del Código Procesal Civil; y de conformidad con el artículo trescientos noventitrés del mismo cuerpo legal; declararon IMPROCEDENTE el recurso de casación interpuesto a fojas ciento noventiocho por don Cornelio Vega Rengifo contra la sentencia de vista de fojas ciento noventicinco, su fecha once de febrero de mil novecientos noventinueve; CONDENARON al recurrente a la Multa de Tres Unidades de Referencia Procesal, así como al pago de las costas y costos del recurso; ORDENARON la publicación del texto de la presente resolución en el Diario Oficial El Peruano; en los seguidos por don Joaquín Ruiz Celis, sobre Pago de Mejoras; y los devolvieron. SS. BELTRAN Q. ALMEIDA P. SEMINARIO V. ZEGARRA Z. VILLACORTA R. C-23860

**CAS. Nº 0781-99 CAJAMARCA** 14-07-2000 VISTOS; y CONSIDERANDO: Primero.- Que, de conformidad con el inciso segundo del artículo trescientos ochenticinco del Código Procesal Civil, el recurso de casación procede contra los autos que en revisión pongan fin al proceso; Segundo.- Que, el presente caso concluyó con la expedición de la sentencia en primera instancia de fojas doscientos setentinueve, fechada el veinticinco de junio de mil novecientos noventiocho, y que quedó consentida al no interponerse medio impugnatorio alguno dentro del plazo de ley, conforme es de apreciarse del auto de fojas doscientos noventiuno; Tercero.- Que, el auto materia del presente recurso fue expedido en la etapa de ejecución de sentencia, por lo tanto no se trata de un auto que pone fin al proceso, en atención a lo indicado precedentemente; por estas razones; declararon NULO el concesorio de fojas cuatrocientos siete, su fecha dieciocho de marzo de mil novecientos noventinueve, e INAD-

[Columna derecha:]

MISIBLE el recurso de casación interpuesto a fojas trescientos noventisiete por don Lorenzo Malca Hernández contra el auto de vista de fojas trescientos ochentitrés, su fecha trece de enero de mil novecientos noventinueve; en los seguidos por don Roberto Malca Hernández, sobre Desalojo sobre Ocupación Precaria; y los devolvieron. SS. BUENDIA G. BELTRAN Q. ALMEIDA P. SEMINARIO V. ZEGARRA Z. C-23861

**CAS. Nº 2581-98 AREQUIPA** 24-03-2000 VISTOS; con los acompañados; en audiencia pública llevada a cabo en la fecha la Sala de Derecho Constitucional y Social de la Corte Suprema de Justicia de la República, integrada por los señores Vocales; Buendía Gutiérrez, Beltrán Quiroga, Almeida Peña, Seminario Valle y Zegarra Zevallos; luego de verificada la votación con arreglo a Ley, emite la siguiente sentencia; MATERIA DEL RECURSO.- Se trata del recurso de casación interpuesto por don Luis Hernando Soto Vargas Taylor mediante escrito de fojas cuatrocientos setentiuno, contra la sentencia de vista de fojas cuatrocientos cuarentisiete, su fecha tres de noviembre de mil novecientos noventiocho, expedida por la Primera Sala Civil de la Corte Superior de Arequipa, que Confirmando la apelada de fojas doscientos tres, fechada el veintiuno de abril de mil novecientos noventiocho, declara Fundada la Excepción de Prescripción Extintiva deducida por el demandado don Luis Enrique Nuñez Paredes; en los seguidos por don Luis Hernando Soto Vargas Taylor, sobre Nulidad de Contrato de Compra Venta y otro; FUNDAMENTOS DEL RECURSO.- que, concedido el recurso de casación a fojas cuatrocientos setentiséis, es declarado procedente mediante resolución de fecha tres de noviembre de mil novecientos noventinueve, por la causal de inaplicación de la norma de derecho material contenida en el artículo mil novecientos noventiuno del Código Civil, por no haberse emitido pronunciamiento sobre la renuncia de la prescripción por parte del co- demandado don Luis Enrique Nuñez Paredes, producida mediante el inicio del procedimiento administrativo de titulación ante la Dirección Regional de Agricultura, lo cual constituye una manifestación de voluntad y un acto incompatible con la voluntad de favorecerse con la prescripción, trámite que continuó aún al vencer el plazo de prescripción el catorce de noviembre de mil novecientos noventicuatro; CONSIDERANDO: Primero.- que, como principales fechas se puede señalar las siguientes; que el acto de compraventa privado del fundo rústico celebrado entre Luis Reyes Luján y Luis Enrique Nuñez Paredes es de fecha dos de diciembre de mil novecientos sesentinueve; la demanda de nulidad propuesta por la esposa de Reyes Luján es admitida el cinco de junio de mil novecientos noventisiete, con cuyo objeto inscribió su matrimonio celebrado en el extranjero el catorce de octubre de mil novecientos cincuenticinco, en la Municipalidad de Lima, con fecha tres de diciembre de mil novecientos noventiséis; Segundo.- que, la renuncia tácita a la prescripción presupone una manifestación de voluntad, de la que deba deducirse un acto incompatible con la voluntad de favorecerse con la prescripción, que permita a su vez inferir indubitablemente voluntad de renunciar; Tercero.- que, un acto resulta ser incompatible con otro cuando se advierte la exclusión de uno de ellos por el otro, una diferencia esencial que hace que ambos no puedan estar juntos; Cuarto.- que no se puede renunciar a lo que todavía no se ha ganado u obtenido; Quinto.- que, el hecho de que el poseedor de un fundo agrícola a título de comprador por documento privado inicie un trámite administrativo ante el Ministerio de Agricultura, para ser declarado feudatario en el año de mil novecientos setentidós o conseguir un título de propiedad del fundo, para inscribirlo en los Registros Públicos al amparo del Decreto Legislativo seiscientos cincuentitrés, con fecha diecinueve de mayo de mil novecientos noventitrés, no constituyen actos incompatibles con la voluntad de favorecerse con la prescripción, que vencía el catorce de noviembre de mil novecientos noventicuatro; Sexto.- que, los actos administrativos realizados por el comprador para conseguir título de propiedad con anterioridad al cumplimiento del término de la prescripción extintiva de la acción real, no es excluyente del derecho a la prescripción que es un derecho irrenunciable, ya que aquel trámite se inició antes de que transcurriera el término de la prescripción y por otro lado significaba realizar actos a favor del derecho y no actos en contra de él; Sétimo.- que, en virtud a lo señalado, no es de aplicación el artículo mil novecientos noventiuno del Código Civil, que se deduce en el recurso de casación; declararon INFUNDADO el recurso de casación interpuesto por don Luis Hernando Soto Vargas Taylor a fojas cuatrocientos setentiuno, contra la resolución de vista de fojas cuatrocientos cuarentisiete, su fecha tres de noviembre de mil novecientos noventiocho, ORDENARON la publicación del texto de la presente re0solución en el Diario Oficial El Peruano; en los seguidos por don Luis Constantino Reyes Luján y otro, sobre Nulidad de Contrato y otros; y los devolvieron. SS. BUENDIA G. BELTRAN Q. ALMEIDA P. SEMINARIO V. ZEGARRA Z. C-23862

**CAS. Nº 0938-99 LIMA** 24-07-2000 VISTOS; y CONSIDERANDO; Primero.- que, el recurso de casación cumple con los requisitos de forma que establece el artículo trescientos ochentisiete del Código Procesal Civil, para su admisibilidad; Segundo.- que, respecto a los requisitos de fondo, el recurrente invoca la causal de inaplicación del artículo ciento seis del Código Adjetivo, la suspensión del proceso cuando se presuma que existe fraude o colusión para perjudicar a un tercero; Tercero.- que, el recurso de casación por su naturaleza extraordinaria exige una serie de requisitos que deben ser rigurosamente satisfechos por el impugnante, que en el caso sub materia, no es claro ni precisa el recurso, no se discute sobre derecho de propiedad para alegar alguna acción reivindicatoria, mas bien esta causal se invoca contra normas de carácter material, mas no procesal; Cuarto.- que, siendo ello así, el recurso no cumple con los requisitos de fondo que establece el artículo trescientos