# EXHIBIT B-1

# DERECHO ROMANO

## (APUNTES DIDACTICOS PARA UN CURSO)

CUARTA EDICION



EDITORIAL REVISTA DE DERECHO PRIVADO

MADRID

(PERNICE, FERRINI, BONFANTE) defienden que la intención real no es necesaria ni adquirente; e incluso haya quien elimine el emocional en la bis. Que la voluntad de las dos partes mire a resultados de tipo anímico, a traspasar y recibir, respectivamente, o a una disposición efectiva, de hecho, sin pensar en una netamente jurídica, que sea ésta la intención necesaria, es lo que parece armonizar con la diversidad de textos de las fuentes.

...quisito es la *iusta causa*. Para algunos se trata siempre de un negocio precedente; otros identifican con la sola voluntad de las partes. Más acertado es mirar como *iusta causa* la finalidad que, de ordinario, motiva el traspaso de la propiedad y que precede, lógica y cronológicamente, al acto de la entrega de la cosa. Las fuentes no hacen una enumeración de las que se entienden justas causas, sino que nos señalan cuáles sí y cuáles se consideran como causas injustas para la *traditio* e, por tanto, para la adquisición de la propiedad.

...servía en el Derecho clásico solamente para la adquisición de la propiedad; limitado así, no reza con el Derecho justinianeo, en que la condición de *res nec mancipi* había desaparecido.

En virtud del principio *nemo dat quod non habet*, debía, naturalmente, ser propietario el que transmitía. La regla ofreció, sin

---

## DERECHO ROMANO

231

embargo, algunas excepciones: aparte los casos de representación, legal o voluntaria (*curator furiosi vel prodigi, procurator omnium bonorum*), el acreedor pignoraticio, el fisco, el emperador y la emperatriz que verificasen la *traditio* de la cosa pignorada el primero y de cualquier cosa los demás, otorgaban la propiedad aunque ellos no la tuvieran.

### § 127. d) «ADJUDICATIO»

Por tal sentencia de un juez no se adquiría de ordinario la propiedad, porque tal sentencia es meramente declaratoria, no constitutiva de derechos. Pero los pleitos de división de una cosa común se deciden concediendo a cada uno de los antiguos copropietarios el dominio exclusivo de la parte correspondiente, o de toda la cosa, cuando la división efectiva no es posible, indemnizando al otro u otros copropietarios. La decisión judicial en esos casos da nacimiento a un derecho de propiedad: es un modo de adquirir tal derecho. De adquirir el *dominium ex iure Quiritium*, si se trataba de un *iudicium legitimum* (véase § 101); de la propiedad bonitaria, si la *adiudicatio* se pronunciaba en un *iudicium imperio continens*. Como las atribuciones de propiedad las hacía el juez en el procedimiento clásico en virtud de la autorización conferida al efecto por el magistrado en la parte de la fórmula denominada *adiudicatio*, de ahí que se aplicase la misma denominación al modo de adquirir.

De lo dicho se infiere que sólo en las acciones *communis dividundo, familiae erciscundae* y *finium regundorum*, en cuya fórmula se insertaba la aludida cláusula, tenía lugar este modo de adquirir.

### § 128. e) «USUCAPIO»

Consiste en la adquisición de la propiedad por la posesión continuada del objeto durante un cierto tiempo en las condiciones que señala la ley. Los romanos la definieron: *adiectio dominii per continuationem possessionis temporis lege definiti* (288). Los modernos la llaman también prescripción adquisitiva.

Como quiera que entre el antiguo dueño de la cosa y el poseedor de la

(288) D. 41, 3, 3.

misma que, teniéndola un cierto tiempo, se transforma en propietario, no existe una relación de traspaso, parece que debiera clasificarse la *usucapio* entre los modos originarios. Pero una doble consideración lleva a la solución contraria: por una parte, el punto de arranque para la posesión que se va a convertir en propiedad lo constituye una relación con alguien a quien se supone dueño de la cosa, y, por otro lado, las cargas reales que la cosa tuviera no se borran, sino que la cosa pasa con ellas al nuevo propietario que la adquiere por usucapión.

Tal y como esta adquisición de la propiedad por la posesión continuada aparece regulada en el Derecho justinianeo, es el resultado de la fusión de dos instituciones que se dan en el Derecho romano en épocas distintas y en diferentes zonas del Imperio y que durante la época clásica operan con independencia: la *usucapio* del antiguo *ius civile* y la *praescriptio longi temporis* del Derecho honorario. Mirado el tema con un criterio histórico, se nos ofrecen, por tanto, en el Derecho romano tres figuras o fases de este modo de adquirir: la del *ius civile*, la del Derecho honorario y la del Derecho justinianeo.

1) «USUCAPIO» del «IUS CIVILE».—Es la definida por ULPIANO (*Regl.*, 18, 9) como *dominii adeptio per continuationem possessionis anni vel biennii*. Tiene una antigüedad remotísima; las XII Tablas presuponen ya su existencia. Servía para adquirir el *dominium ex iure Quiritium* y se corregían con ella las consecuencias de otros modos de adquirir que hubiesen resultado defectuosos; v. gr., la *mancipatio* de una *res nec mancipi*, o una *mancipatio* o una *in iure cessio* hechas por quien no era *dominus*. El que hubiera recibido así una cosa no adquiría el dominio sobre la misma inmediatamente; pero si la poseía durante el tiempo indicado y con las demás condiciones legales, su posesión (*usus*) se transformaba en dominio (*usus capere, usucapio*).

El plazo de posesión era de dos años para los inmuebles y un año para los muebles. Por tanto, transcurrido este tiempo, el *mancipio accipiens* carecería ya de aquella *actio auctoritatis* con la cual se revolvía contra el transmitente al verse privado judicialmente de la cosa, porque esto no sería ya posible. Es lo que significaba el precepto de las XII Tablas: *usus auctoritas fundi biennium, ceterarum rerum annus esto*.

En cuanto a otros requisitos, el Derecho antiguo, más que establecerlos de un modo positivo, lo que hizo fué señalar prohibiciones, indicar cosas que, no obstante ser poseídas un año o dos, no podían usucapirse. Eran éstas todas las *extra commercium*, el *iter limitare*, el *ambitus*, las *res mancipi* de la mujer enajenadas sin la *auctoritas* de su tutor legítimo, y también —prohi-

Case 3:09-cv-01332-AWT   Document 79   Filed 06/02/10   Page 5 of 18

estas últimas que sirvieron a la jurisprudencia de punto de partida para fijar los requisitos de la institución en épocas posteriores — las cosas hurtadas (res furtivae) y las arrebatadas por la fuerza (res vi possessae), cualquiera que fuese la persona a cuyas manos hubieran ido a parar, ya que subsistía la prohibición hasta que no volviesen a su dueño.

Posteriormente, los antiguos jurisconsultos, dejando subsistentes con su carácter objetivo las prohibiciones aludidas, señalaron a esta usucapión civil como dos requisitos: el justo título y la buena fe (289). Como ambos nasan a la configuración que este modo de adquirir presenta en el Derecho justinianeo, hablaremos de ello más adelante.

Formas anormales o extraordinarias de «USUCAPIO» en el Derecho civil.— La son la usucapio pro herede, la usureceptio ex fiducia y la usureceptio ex praediatura, que se agrupan bajo la expresión general de usucapiones ex causa lucrativa. En ellas no se exigía la buena fe ni el justo título. La primera tenía lugar cuando alguno se apoderaba de cosas de una herencia en el período comprendido entre el fallecimiento del causante y la aceptación del heredero. La segunda, cuando una cosa que había sido mancipada por su dueño para servir de garantía a una obligación (mancipatio fiduciae causae) volvía a la posesión de su antiguo dueño por cualquier motivo, y en virtud de la recuperación (receptio) de la posesión (usus) —de ahí usureceptio— se hacía otra vez dominus de la cosa sin más que el transcurso de tiempo, que en estos casos de un año para cualquier clase de cosa. Lo mismo le sucedía al que, habiéndole embargado el Estado un fundo, tenía éste en su poder durante dos años; readquiría con ello su propiedad (usureceptio ex praediatura).

Ninguno de estos casos subsiste en el Derecho justinianeo. Mal vista socialmente la usucapio pro herede y muy restringida su aplicación por obra de la jurisprudencia, dos disposiciones de ADRIANO y MARCO AURELIO admitiendo el ejercicio de las acciones correspondientes contra los que se apoderaban de bienes hereditarios acabaron con la institución. Las usureceptiones dejaron de existir cuando desaparecieron las dos instituciones que las servían de base.

3) La «PRAESCRIPTIO» o «EXCEPTIO LONGI TEMPORIS» del Derecho honorario.—La usucapio civil era un modo de adquirir que sólo surtía efecto entre ciudadanos romanos y no valía más que respecto de cosas susceptibles de dominium ex iure Quiritium. No era, por tanto, aplicable a los fundos provinciales ni a las relaciones entre peregrinos.

(289) Acerca del origen de estos requisitos y de su inexigencia en la primitiva usucapio de las XII Tablas, v. GIRARD: Mem. (7.ª), p. 317, n. 6.

---

a que, teniéndola un cierto tiempo, se trueñera en propietario, no a una relación de traspaso, parece que debiera distinguir la usucaptio en los modos originarios. Pero una doble consideración lleva a la solución aria: por una parte, el punto de arranque en la posesión que se va a convertir en propiedad lo constituye una relación con alguien a quien se va a dueño de la cosa, y, por otro lado, las caprichosas que la cosa tuviese borran, sino que la cosa pasa con ellas a su nuevo propietario que la era por usucapión.

al y como esta adquisición de la propiedad se la posesión continuada regulada en el Derecho justinianeo, es el reñido de la fusión de dos relaciones que se dan en el Derecho romano clásico; distintas y en diferentes zonas del Imperio y que durante la época clásica operan con independencia: la usucaptio del antiguo ius civile, y la praescriptio longi temporis del Derecho honorario. Mirado el tema con un criterio histórico, se nos ofrece por tanto, en el Derecho romano tres figuras: faces de este modo de adquirir: la del ius civile, la del Derecho honorario y la del Derecho justinianeo.

«USUCAPIO» del «IUS CIVILE».—Es la definió por ULPIANO (Regl., 18, 1) dominii adeptio per continuationem possessionis anni vel biennii. Tiene antigüedad remotísima; las XII Tablas proponen ya su existencia para adquirir el dominium ex iure Quiritium se corregían con ella secuencias de otros modos de adquirir que hubieran resultado defectuosas; v. gr., la mancipatio de una res nec mancipi o una mancipatio o una cessio hechas por quien no era dominus. El que hubiera recibido así una cosa no adquiría el dominio sobre la misma inmediatamente; pero si la durante el tiempo indicado y con las demás condiciones legales, su posesión (usus) se transformaba en dominio (usus cam, usucapio).

El plazo de posesión era de dos años para los inmubles y un año para los muebles. Por tanto, transcurrido este tiempo, el usucapio accipiens carecía de aquella actio auctoritatis con la cual se movía contra el transmitente verse privado judicialmente de la cosa, pero esto no sería ya posible a lo que significaba el precepto de las XII Tablas: usus auctoritas fundi biennium, ceterarum rerum annus esto.

En cuanto a otros requisitos, el Derecho antiguo más que establecerlos de modo positivo, lo que hizo fué señalar prohibiciones, indicar cosas que no podían ser poseídas un año o dos, no podían usucapire. Eran éstas tomadas de aquella extra commercium, el iter limitare, el ambitus, las res mancipi de la mujer enajenadas sin la auctoritas de su tutor legítimo, y también —prohi-

vinciales, **sobre** los cuales ya dijimos que no podía haber *dominium*. Ant...
situaciones análogas a las hipótesis de usucapión del Derecho civil, los ma...
gistrados provinciales admitían que contra la acción real ejercitada por quien...
pretendía tener sobre el fundo la señoría general que los intérpretes deno...
minan propiedad provincial, el que venía poseyendo el fundo se defendie...
ra por medio de una *exceptio* o *praescriptio*, siempre que su situación tuviera...
ya una antigüedad de diez o de veinte años, según que se tratase o no di...
moradores en la misma ciudad (más tarde en la misma provincia). La función...
de la *praescriptio long; temporis* era, por tanto, defensiva; mientras se es...
tuviese en posesión de la cosa se rechazaba a quien la reclamase judicialmen...
te. Pero si la posesión se perdía, carecía el desposeído de acción real para re...
clamar el fundo.

Andando el tiempo, sin embargo, se concedió también dicha acción ...
Por otra parte, como el Derecho honorario exigía también para proteger esta...
situación de los poseedores de fundos provinciales que su posesión fu...
los requisitos que se señalaban para la usucapión civil, llegó a no haber más...
diferencia entre ambas instituciones que la de las cosas a las que, respe...
tivamente, se podían aplicar y la del plazo mayor que implicaba la *long; tem*...
*poris praescriptio*.

3) *La prescripción adquisitiva en el Derecho justinianeo.*—La fusión de...
las dos modalidades anteriores es operada definitivamente en la compilación...
de JUSTINIANO. Aunque éste emplea la antigua denominación de *usucapio* para...
los casos en que la cosa cuya propiedad se adquiere por la posesión sea mue...
ble, y la expresión *praescriptio* para referirse a dicho modo de adquirir cuan...
do la cosa es inmueble, la institución es una sola.

Los requisitos de este modo de adquirir —ya elaborados anteriormente...
y en los que JUSTINIANO hizo escasas modificaciones— suelen indicarse por los...
comentaristas con la enumeración nemotécnica siguiente: *res habilis, titulus*...
*fides, possessio, tempus*.

*Res habilis.*—A la antigua prohibición de las cosas furtivas o *vi poses*...
se añadieron otras: las *res fiscales*, los inmuebles de la Iglesia y fund...
pía, los de pupilos y menores, las cosas dotales y, en general, las cosas qu...
no pueden enajenarse.

*Titulus.*—Es la causa que sirve de arranque a la posesión, explicando l...
ausencia de lesión al derecho ajeno. Consiste en una cierta relación con ...
anteriormente tenía la cosa, relación que, siendo defectuosa para transf...
por él el dominio, inicia y justifica, sin embargo, la posesión. Los título...
mamos no dan del título o *iusta causa* un concepto general. Lo que hace...

Case 3:09-cv-01332-AWT   Document 79   Filed 06/02/10   Page 7 of 18

## J. ARIAS RAMOS

...sobr[e] muebles ya dijimos que no podía haber *dominium*. Ante ...a agora las hipótesis de usucapión del Derecho civil, los ma... ...n propia admitían que contra la acción real ejercitada por quien ...lla tenía ...el fundo la señoría general que los intérpretes deno... ...propia provincial, el que venía poseyendo el fundo se defendía ...media ...a *exceptio* o *praescriptio*, siempre que su situación tuviese ...a antigüedad de diez o de veinte años, según que se tratase o no de ...ores en una ciudad (más tarde en la misma provincia). La función ...*praescriptio longi temporis* era, por tanto, defensiva; mientras se es... ...en plazo de la cosa se rechazaba a quien la reclamase judicialmen... ...o al llegar se perdía, carecía el desposeído de acción real para re... ...el fund[o].

...clando luego, sin embargo, se concedió también dicha acción real. ...ra parte en el Derecho honorario exigía también para proteger esta ...ón de ...poseedores de fundos provinciales que su posesión tuviese ...quisitos que señalaban para la usucapión civil, llegó a no haber más ...encia entre las instituciones que la de las cosas a las que, respec... ...ente, se aplicaban y la del plazo mayor que implicaba la *longi tem...* ...*praescriptio*.

*La Propiera adquisitiva en el Derecho justinianeo.*—La fusión de ...s modos anteriores es operada definitivamente en la compilación ...niana, ...que éste emplea la antigua denominación de *usucapio* para ...es en ...al cosa cuya propiedad se adquiere por la posesión sea mue... ...la expresión *praescriptio* para referirse a dicho modo de adquirir cuan... ...cosa es ...mueble. La institución es una sola.

...Respecto a este modo de adquirir —ya elaborados anteriormente ...s modos ...ue el Derecho justinianeo hizo escasas modificaciones— suelen indicarse por los ...tratadistas la enumeración nemotécnica siguiente: *res habilis, titulus,* ...*possessio, muss.*

...*habili.*—Al antigua prohibición de las cosas furtivas o *vi possessae* ...dieron ...as las *res* fiscales, los inmuebles de la Iglesia y fundaciones ...es de ...pubi y menores, las cosas, dotales y, en general, las cosas que ...den ena...enar...

---

...tener las situaciones que se consideran como tales, anteponiendo a cada ...er la partícula *pro*. Así *pro emptore, pro dote, pro donato, pro soluto, pro* ...*derelicto, pro herede*, indicando que el poseedor tiene la cosa por... ...que se la vendieron, o se la dieron en dote, o se la regalaron, etc., etc., si ...en ...por falta de derecho en el que realizó tales actos, o porque éstos, con ...ban por el Derecho romano, no son aptos para producir tal efecto, no han po... ...dido servir para hacer pasar por sí solos el derecho de propiedad de la cosa ...al que la recibió (290).

Los jurisconsultos romanos, para referirse también a otros casos en los ...cediendo ciertamente una justa causa que fundamenta la posesión, no ...sima esta causa denominación especial, suelen indicarla con la expresión *pro* ...*suo*. La frase, sin embargo, no tiene un sentido técnico preciso, porque apa... ...rece también empleada para referirse a todos los casos en que no se posee ...en nombre ajeno.

*bona fides.*—Es la buena fe en el poseedor. Se trata de una creencia, es ...decir, un requisito de carácter psicológico. No consiste en que el poseedor ...esté en la idea de que el acto del cual arranca su tenencia de la cosa haya ...sido para adquirir la propiedad sobre ella. Si así fuese, no podría usuca... ...pir el que obtuvo por *traditio* una *res mancipi*, ya que de sobra sabía que la ...simple entrega de una cosa de esta clase no le daba la propiedad de la mis... ...ma. La buena fe es más bien la convicción de que al tener la cosa no se ...lesiona un derecho ajeno, convicción que sí que cibe en la hipótesis a que ...estamos de referirnos.

Tal creencia bastaba con tenerla en el momento de tomar posesión de la ...cosa: *mala fides superveniens non nocet* (291).

*Possessio.*—No bastaba cualquier tipo de tenencia de la cosa. Además de ...la disponibilidad material de ésta, se requería el *animus* o intención de te... ...nerla como señor exclusivo de la misma.

(290) En el Digesto aparecen, sin embargo, una serie de textos que admiten la ...usucapión en casos en que el *titular* no es que sea defectuoso, sino que no existe; no ...habiendo más que una creencia errónea —con error fundado: *probabilis, tolerabilis*— ...en su existencia por parte del usucapiente. Lo que los intérpretes han llamado título ...putativo. Una lista de los indicales pasajes del Digesto puede verse en BONFANTE, l. c., ...II, Scr. XI, p. 268. El cap. XXXI de esta obra constituye una óptima monografía so... ...bre la usucapión. V. también del mismo autor: *La iusta causa dell'usucapione e il suo* ...*rapporto colla bona fides*, en Scr. giur., II, 569; BASELER, *Miscellanea (Titulus putati...* ...*vus)*, en Z. S. S., 45 (1925), p. 235 ss.; COLLINET: *Iusta causa et bona fides dans l'usu...* ...*capion d'après les Instituts de Gaius*, en Mélanges Fournier, París, 1929.

(291) Para algunas aclaraciones y atenuaciones a este principio, v. GIRARD, l. c., pá... ...gina 319, n. 4, y la bibliografía allí citada.

236

J. ARIAS RAMOS

*Tempus.*—Modificando los exiguos plazos antiguos, JUSTINIANO estableció el de tres años para las cosas muebles y los de diez años entre presentes y veinte entre ausentes para los inmuebles, refiriendo la presencia al hecho de vivir en la misma provincia.

Durante dicho tiempo, la posesión debía ser ininterrumpida. La interrupción se clasifica por los intérpretes en natural —pérdida efectiva del contacto o posesión del objeto— y civil —ejercicio de acción contra el poseedor o protesta formulada ante la autoridad pública—. Probablemente la interrupción civil se aplicó antes de modo exclusivo a la *praescriptio longi temporis*.

En el cómputo de tiempo de posesión requerido puede tener lugar lo que se llama la *successio* y la *accessio possessionis*, por las cuales, al tiempo de posesión del heredero debe sumarse el que lleva el causante, y al tiempo que lleva de posesión el adquirente el que estuvo poseyendo aquel que le transmitió la cosa (292).

*Praescriptio longissimi temporis.*—También en la época postclásica se da una fórmula anómala o extraordinaria de adquisición de la propiedad por la posesión. Aparece como una consecuencia del principio general establecido por TEODOSIO de que todas las acciones mueren si se dejan transcurrir treinta años sin ejercitarlas, a partir del día en que surgió la posibilidad de hacerlo. Por tanto, a la reivindicación entablada contra un poseedor en tal hipótesis, éste podrá oponer la prescripción extintiva de la acción del demandante. JUSTINIANO transformó también en adquisitiva esta prescripción de treinta años, declarando que el poseedor en tales condiciones adquiría el dominio, siempre que hubiese tenido buena fe en el momento de la toma de posesión. Ni se requería, por tanto, el justo título, ni rezaban con este modo de adquirir algunas de las prohibiciones que pesaban sobre ciertas cosas para ser objeto de la usucapión ordinaria.

§ 129. OTROS MODOS DE ADQUIRIR LA PROPIEDAD

Además de los enumerados, existen otros hechos jurídicos que sirven para adquirir la propiedad. De ellos, unos —como sucede con la sucesión universal, el legado, los casos en los cuales el dominio es perdido por una persona y otorgado a otra por disposición de la ley— son estudiados al exponer las instituciones o materias con las que están relacionados. Otros, salen realmente

(292) V. SUMAN: *Successio possessionis et olim defuncti*, en *Riv. Ita. Sc. Giur.*, 2, p. 225 ss.

---

DERECHO ROMANO

...ria del campo del Derecho privado. Tal sucede, por ejemplo, con la ven... adquisiciones gratuitas de tierras, llevada a cabo por los magistrados... *quaestoriae, agri vectianus*), o las concesiones de terrenos a los miembr... las colonias (*ager adsignatus*), así como las adquisiciones de prisioner... guerra que el Estado vendía como esclavos (*emptio sub corona*) o la de... objetos procedentes también de botín de guerra (*venditio sub hasta*).

TÍTULO III

Copropiedad (293)

§ 130. CONCEPTO DOCTRINAL

El dueño de una cosa no es siempre una sola persona. A veces una... pertenece al mismo tiempo a varios sujetos, y se dice entonces que hay... condominio o copropiedad. La denominación no es romana (294); las... fuentes se refieren a tales situaciones, hablan de *rem communem esse*, *rem... nostram habere*, *rem plurium esse*. A los varios titulares los llaman *domi...* y también *socii*. Las palabras *condominium* y *compropietas* las conoc... o emplean los comentaristas posteriores.

El condominio podía originarse porque así lo hubieran querido los... propietarios, y los intérpretes hablan entonces de *copropiedad voluntari...* bien por circunstancias ajenas a dicha voluntad, v. gr., porque la cos... ha sido legada conjuntamente, y como las fuentes hablan entonces de in... ... *in communione...*, los intérpretes califican tales casos de *copropiedad... incidental*.

La construcción doctrinal del condominio ha dado lugar entre los... a teorías diversas. Ante la cuestión de cómo es posible que tenga... propiedad calidad de exclusividad, pueda haber varios derechos de pa... correspondiendo contemporáneamente a varias personas sobre la...

(293) Bibliografía fundamental, v. en BONFANTE: *Corso*, II, Ses. II, p. 3, n. 1; también J. GALOPIN: *Étude sur la réforme juridique de l'indivision en droit...* París, 1934.
(294) V. WINDSCHEID, I, c, #, p. 157, n. 2.

# EXHIBIT B-2

Max Arias-Schreiber Pezet

# EXEGESIS

## DEL CODIGO CIVIL PERUANO DE 1984

### TOMO IV
### DERECHOS REALES

CONCEPTOS GENERALES / BIENES / POSESION /
ADQUISICION, CONSERVACION, CLASES, EFECTOS,
PRESTACIONES, MEJORAS, DEFENSA, EXTINCION /
PROPIEDAD: DISPOSICIONES GENERALES /
ADQUISICION POR APROPIACION, ESPECIFICACION,
MEZCLA, ACCESION Y TRANSMISION /

CON LA COLABORACION DE:

Carlos Cárdenas Quirós
Angela Arias-Schreiber M.
Elvira Martínez Coco

GACETA JURIDICA
EDITORES

346
A71
1995

## Imprescriptibilidad de la acción reivindicatoria

> **Artículo 927.- La acción reivindicatoria es imprescriptible. No procede contra aquél que adquirió el bien por prescripción.**

Hemos expresado con anterioridad que uno de los atributos clásicos de la propiedad es la reivindicación. El artículo 927 no fue contemplado por el código derogado y permite que el titular de un bien mueble o inmueble recupere el bien del cual ha sido desposeído, sin límites en el tiempo.

Desde luego lo expresado al finalizar el párrafo anterior no enerva el derecho que confiere la ley para adquirir la propiedad mueble e inmueble mediante la prescripción adquisitiva contemplada en los artículos 950 a 953 del Código Civil.

El texto del artículo 927 ha sido severamente criticado por Lucrecia Maisch von Humboldt. Dicha autora sostiene que «el error conceptual es evidente pues aquél que adquirió el bien por prescripción es, sin lugar a duda, el nuevo propietario, ya que el verbo está en pasado: «adquirió»; en consecuencia el que perdió el bien se convierte simplemente en un «ex-propietario» quien, lógicamente, ya no tiene ni los derechos que otorga la propiedad, ni las acciones que la tutelan. Ahora bien, ¿quién es el titular de la acción reivindicatoria? Indiscutiblemente el nuevo propietario, es decir el que adquirió el bien por usucapión» (Lucrecia Maisch von Humboldt, Código Civil, Tomo V, Exposición de Motivos y Comentarios, Compilación de la Dra. Delia Revoredo Marsano, página 176).

A nuestro modo de ver la crítica resulta exagerada, pues del referido texto lo que se desprende es que quien ha adquirido un bien por prescripción tiene un título de tal naturaleza que no cabe la acción reivindicatoria de parte de su anterior propietario.

**Pensamos que la parte final del artículo debería suprimirse, pues parece obvio que quien ha adquirido un bien por prescripción (usucapión) para nosotros no puede perderlo por reivindicación.**

**Fuentes:** Artículo 2758 del Código Civil argentino. Artículo 985 del Código Civil alemán. Artículo 948 del Código Civil italiano. Artículo 1311 del Código Civil portugués.

**Concordancias:** Artículos 950 y 953 del Código Civil.

## La expropiación

> **Artículo 928.- La expropiación se rige por la legislación de la materia.**

La expropiación es una institución muy antigua. Ya en la Biblia se encuentra un precepto que la vislumbra en el Versículo 23 del Capítulo 21 del Libro I de las Crónicas, del Antiguo Testamento, cuando señala lo siguiente: «Dijo David a Ornán: «Dame este lugar de la era en que edifique un altar a Jehová y dámelo por su cabal precio, para que cese la plaga del pueblo».

En Grecia existió la expropiación como principio, debido a la situación de privilegio en que se encontraba el Estado frente a la propiedad privada.

En Roma, según Girard, «si bien no se encuentra un sistema general de expropiación, puede sin embargo observarse que los romanos la empleaban prácticamente en algunos casos, en miras de un interés superior, ya sea con indemnización o sin ella» (Cita de Fernando Legón, Tratado Integral de la Expropiación Pública, Nº 8, página 126).

Pero es sólo con la exaltación de los derechos del hombre que la expropiación adquiere carta de ciudadanía, reconociéndose el derecho del expropiado paralelamente al del expropiante.

De acuerdo con la Declaración de los Derechos del Hombre «siendo la propiedad inviolable y sagrada, nadie puede ser privado de ella sino cuando la necesidad pública, legalmente constatada, lo exija evidentemente y bajo la condición de una justa y previa indemnización» (Donoso Solar, La Expropiación por Causa de Utilidad Pública, Nº 1, página 12).

Durante la República se dictaron varias leyes de expropiación, como las del 12 de noviembre de 1900, 23 de octubre de 1903, Nº 4108 del 11 de marzo de 1920, Nº 4118 del 11 de mayo de 1920, Nº 4125 del 12 de mayo de 1920, Artículos 2, 4 y 5 de la Ley Nº 8621 del 20 del enero de 1938, Ley Nº 9125 del 4 de junio de 1940 y Decreto Legislativo Nº 313, del 12 de noviembre de 1984, que es el que actualmente rige.

Siguiendo la tónica del código derogado, el artículo 928 simplemente se remite a la Ley de Expropiación vigente. No se han incorporado sus reglas al Código Civil, porque varían constantemente, según lo prueba nuestra experiencia y la de otros países. Aun cuando el estudio de la expropiación no co-

# EXHIBIT B-3

Max Arias-Schreiber Pezet
Universidad de Puerto Rico
Río Piedras, P. R. 00931

Carlos Cárdenas Quirós

# EXEGESIS

DEL CODIGO CIVIL PERUANO DE 1984

TOMO V
DERECHOS REALES

PROPIEDAD (Continuación) : PRESCRIPCION
ADQUISITIVA, PROPIEDAD PREDIAL, LIMITACIONES,
DERECHOS, EXTINCION / COPROPIEDAD /
USUFRUCTO / USO Y HABITACION / SUPERFICIE /
SERVIDUMBRES

CON LA COLABORACION DE:

Angela Arias-Schreiber M.
Elvira Martínez Coco

GACETA JURIDICA
EDITORES

El artículo 950, siguiendo a su precedente el artículo 871 del Código Civil de 1936, distingue dos clases de prescripciones adquisitivas: la denominada corta u ordinaria y la larga o extraordinaria.

La prescripción adquisitiva corta, ordinaria o leve, como también se le conoce, tiene por objeto favorecer a todos aquellos que creyéndose en justicia propietarios no son tales por razones ajenas a su voluntad y previsión. Dicen Planiol y Ripert "que la prescripción de diez a veinte años tiende a subsanar en cuanto al verdadero propietario, el vicio que resulta del hecho de no tener la propiedad aquél de quien el poseedor haya obtenido su derecho. La ley, como especial consideración en favor del tercero que ha recibido un inmueble a "non domini", le asegura, al cabo de un breve plazo, la situación que hubiera tenido si hubiera tratado con el verdadero propietario" (Planiol y Ripert, Tratado Práctico de Derecho Civil francés, tomo III, Los bienes, N° 700, página 600).

Son requisitos de la prescripción adquisitiva corta u ordinaria:

1) La posesión continua y a título de propietario (*possessio ad usucapionem*) ejercitada sobre un bien.

Se entiende por posesión continua aquella que se presenta en el tiempo sin intermitencias ni lagunas. No se necesita, empero, que el poseedor haya estado en permanente contacto con el bien y basta que se haya comportado como lo hace un dueño cuidadoso y diligente, que realiza sobre el bien los diversos actos de goce de acuerdo con su particular naturaleza. Baudry Lacantinerie cita como ejemplo de esta continuidad "los bosques sometidos a la tala hasta realizar de tiempo en tiempo los cortes naturales, dejando entre los mismos, intervalos bastante largos, para que la posesión sea continua" (Baudry Lacantinerie, Traité Theorique et Practique de Droit Civil, tomo I, N° 1436, página 196).

2) La posesión debe ser pacífica, esto es, marginada de todo acto violento por parte del poseedor. Expone Álvarez Caperochipi "que el título de la posesión puede alterarse. El poseedor en nombre de otro puede presentarse como poseedor a título de dueño y la posesión violenta, clandestina o precarista puede transformarse en pacífica, pública y a título de dueña. Se trata de una inversión posesoria. Pero la inversión no se presume, sino que, al contrario, se presume que se continúa detentando con el mismo título con el que se adquiere. La inversión posesoria debe resultar de un acto expreso y final. El

16

tiempo para la usucapión empezará a contarse desde entonces" (José Antonio Álvarez Caperochipi, op. cit, página 150).

Aclara Albaladejo que la posesión es pacífica "aunque se defienda por la fuerza. Como de lo que se trata es que la situación mantenida violentamente no tenga valor (mientras que la violencia dure) para quien ataca la posesión de otro, hay que afirmar que si hay posesión pacífica para el que defiende por la fuerza la posesión que otro trata de arrebatarle" (Manuel Albaladejo, op. cit, página 83).

3) Esta posesión tiene que ser pública, o sea a la vista de todos y no oculta.

4) La posesión tiene que ser a título de propietario. Quedan de consiguiente excluidos aquellos poseedores que gozan de la llamada posesión inmediata (Exégesis, Tomo IV, página 101 edición 1996) como son los arrendatarios, usufructuarios, usuarios, comodatarios, anticresistas, retenedores y depositarios. Así lo establece el artículo 873 del Código Civil derogado de 1936, inexplicablemente excluido en el Código vigente. Sí es atendible, en cambio, la supresión del artículo 874 del Código derogado que establecía un plazo especial de prescripción, pues los herederos de las personas impedidas de adquirir por prescripción los bienes poseídos en forma inmediata no podían esgrimir un título distinto del que tuvo su sucesor. Se quedó que sólo cabe que estén sujetos a las reglas generales que existen sobre esta materia y que en estos casos no quepa la suma de posesiones.

5) Debe existir justo título, o sea un instrumento de orden legal destinado a la transmisión de la propiedad (la compraventa, permuta, partición, dación en pago, el aporte a la formación del capital de una sociedad, la herencia y el legado, entre otros).

Este instrumento legal sería perfecto de no mediar circunstancias ajenas al adquirente y propias del enajenante, que impiden una transferencia efectiva. Planiol y Ripert definen el justo título diciendo que "es el acto que tiene como finalidad la transmisión de la propiedad y que la hubiera transmitido efectivamente si hubiera sido celebrado con el verdadero propietario" (Planiol y Ripert, op. cit, tomo III, Los Bienes, N° 701, página 600).

En suma, el justo título debe tener los caracteres que siguen:

a) Ser un acto traslativo de dominio, como son la compraventa, la dona-

17

# EXHIBIT B-4

# INSTITUCIONES

DE

# DERECHO ROMANO

POR

## PEDRO BONFANTE
Profesor de la Real Universidad de Roma

TRADUCCION DE LA OCTAVA EDICION ITALIANA

POR

## LUIS BACCI Y ANDRES LARROSA

REVISADA POR

## FERNANDO CAMPUZANO HORMA
Presidente de la Junta Central de Registradores de España

(PUBLICACIONES DEL "INSTITUTO
CRISTÓFORO COLOMBO" DE ROMA)

TERCERA EDICION

UNIVERSIDAD CATOLICA DEL PERU
BIBLIOTECA
COMPRA

INSTITUTO EDITORIAL REUS
PRECIADOS, 6 Y 23, Y PUERTA DEL SOL, 12
MADRID
1 9 6 5

*A la memoria de* FRANCISCO
FILOMUSI GUELFI, *que me enseñó
la dignidad de la Ciencia y la
unidad de su método.*

041532

Núm. Rgtro. 2635-65

Depósito Legal: M. 5611.—1965.

— 258 —

El *ius postliminii* (véase § 16) se aplicaba no sólo a las personas, sino también a algunos objetos de guerra (naves de guerra y de transporte, caballos domados, mulos ensillados), pero no la ropa ni las armas, que no se pierden sin deshonra, los cuales, si se volvían a quitar al enemigo, volvían al antiguo propietario.

Es *res nullius* y objeto de ocupación la isla nacida en el mar.

En cambio, la toma de posesión de las cosas abandonadas por el propietario legítimo (*res derelictae*) no es considerada por los romanos como un caso de ocupación, sino como una especie distinta de adquisición derivativa; sin embargo, se enlaza más bien a otras instituciones (véase § 59).

La toma de posesión pierde un poco de su carácter material en orden a aquellos objetos que no pueden, como los animales selváticos, sustraerse al ocupante. Los romanos recuerdan a este propósito las piedras, las gemas y todas las cosas que se descubren en la orilla del mar, o sea lo que no forma parte de un fundo, privado o público. En tal caso, solamente el descubrimiento, no la aprehensión material, genera la adquisición, que se llama precisamente *inventio*.

Es adquisición por hallazgo en parte también la adquisición del tesoro. Tesoro es todo objeto móvil escondido desde tiempo inmemorial y sobre el cual, como una consecuencia natural, nadie puede tener derecho, en cuanto el propietario no existe verdaderamente y la serie de sus sucesores está extinguida: *vetus depositio pecuniae, cuius non extat memoria, ut iam dominum non habeat* (1). La adquisición del tesoro fué variamente regulada en el curso de la historia del Derecho romano. Sujeto, según parece, en origen, a los puros principios de la atracción materialista, conforme al carácter de la

(1) L. 31, § 1. D. *De a. r. d.* 41, 1. Cfr. también L. un, § 1. C. *De thes.*, 10. 15: *condita ab ignotis dominis tempore vetustivi mobilia*. *Mobilia* no es sino la constitución conceptual de las dos especies de tesoro, el *thesaurus* verdadero y propio, o sea la *pecunia*, y los *mobilia*: cfr. L. 2, C. Th. 10, 18.

— 259 —

propiedad romana (cfr. § 80, 83), va dibujándose luego en la época histórica el derecho del inventor; acaso contribuyeron a ello las pretensiones fiscales, que aparecieron, desde el comienzo del imperio (1), probablemente como consecuencia de la *lex Iulia*, que atribuía al Erario (al cual sucedió el Fisco) los *bona vacantia*, o sea *sine herede*. El ordenamiento del Derecho justinianeo se funda sobre una constitución de Adriano, renovada por el Emperador bizantino León. Según él, si el tesoro ha sido descubierto en un fundo ajeno, el descubridor tiene derecho a la mitad; la otra mitad corresponde al propietario del fundo. El Fisco no adquiere su mitad sino cuando el tesoro ha sido descubierto, no ya en fundo privado, sino en público.

Tenemos, pues, en el tesoro una adquisición por ocupación, o mejor dicho, por *inventio*, a favor de quien lo descubre, y una adquisición legal, que probablemente no es sino un residuo de la accesión total a favor del propietario del fundo. El descubridor en el fundo ajeno no adquiere el tesoro en la parte que le corresponde, sino cuando lo haya descubierto por casualidad (*non data opera*).

§ 83.—ACCESIÓN

§ 20, 24, 26, 29, 34, I. *De ser. dic.* II, I. D. *De a. r. d.* 41. I. C. *De ad. luc*, 7, 41.

Se llama accesión (2) la adquisición de la propiedad que se realiza por efecto de la conjunción de dos cosas, una principal

(1) No ya con Nerón, que, muy al contrario, las rechazó. La historia y el concepto del tesoro han sufrido una grave alteración, por que todos los escritores, siguiendo el ejemplo de Godofredo, colocan en los tiempos de Caro y Carino, aunque es de la época de Nerón (Cfr. Bonfante, *Le vera data di un testo*, etc., en *Mél. Gir*, II, 123-142, y ahora *Scr. giur. vari*, II, págs. 904 y sigs.).

(2) Propiamente el nombre no es romano. *Accesio* significa para